Gabrielli, J.
Plaintiff sustained serious injuries when her left shoe became caught in a hole causing her to fall on her back in the driveway adjoining a supermarket and parking lot leased by defendant Grand Union from Richard Steigler;[1] Following a jury trial, judgment was entered in favor of plaintiff and against the defendants in the sum of $125,000, liability being apportioned 25% against Grand Union and 75% against the Steigler estate. The Appellate Division affirmed, two Justices dissenting. Both Grand Union and the executors appeal and, in separate briefs, assert that plaintiff failed to establish, as to them, that they had notice of the defective condition which caused her harm or that they had sufficient control of the premises to be found blameworthy.
We affirm and hold that there was sufficient evidence to support the verdicts against the defendants. In so doing we have found it necessary and appropriate to re-examine our *611 holding in Cullings v Goetz (256 NY 287) and adopt the rule that a lessor may be liable for harm caused to others upon his land with the permission of the lessee, on the basis of his contract to keep the premises in good repair.
At trial, plaintiff testified that after completing her shopping chores in the store, she left through the front entrance and turned to proceed along the sidewalk adjacent to the building and driveway, leading to a rear lot where her car was parked. However, the far end of the sidewalk was blocked by cartons and rocks and, thus, she was compelled to walk part of the way in the driveway. She then testified that a short distance after she stepped off the sidewalk into the driveway, her left shoe became caught in a hole, causing her to fall.
Plaintiff described the hole as being irregularly round, approximately 10 inches in diameter and 2 inches below the surface. This description was corroborated by an independent witness, the police officer who was called to the scene of the mishap. In fact, the officer described the hole as being from two to four inches in depth. In addition, the record clearly demonstrates that the area around the hole was rutted, cracked and had holes in it, and, further that plaintiff had been to the same store 10 days to 2 weeks prior to the accident and, at that time, had observed that the accident area was cracked, rutted and had uneven surfaces and impressions.
Testimony was also adduced that Grand Union employees regularly used the driveway to unload delivery trucks at a side door that opened to the driveway, and to return shopping carts that store patrons left in the rear lot.
The executors called a construction superintendent who testified that some two and one-half months prior to the accident, at the request of the owner, he had repaired the parking lot, which had deteriorated due to gasoline spillage and "what not”. Although he did not specifically recall looking at the driveway, he was able to state that the parking area, which he had repatched, had the same aged blacktop surface as the driveway.
Grand Union called no witnesses.
Although it is usually stated that the occupier of land is not the insurer of the safety of those who enter with his permission, his "obligation of reasonable care is a full one” (Prosser, Torts [4th ed], § 61, p 393). Thus, while it is not enough for a *612 plaintiff merely to show that danger existed, if he demonstrates that the defect which caused his harm was of such character or duration that a jury could reasonably conclude that due care would have uncovered it, recovery may be had against the occupier of the land (Richardson v Cannold Holding Corp., 308 NY 932; Szczepkowicz v Khelshek Realty Corp., 280 App Div 524; Prosser, Torts [4th ed], p 393; 2B Warren’s Negligence, Landlord and Tenant, § 18.01). Likewise, for a landlord to be held liable for a defective condition upon the premises he must have actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, he should have corrected it (Harrington v 615 West Corp., 2 NY2d 476, 481; Dollard v Roberts, 130 NY 269; cf. Molte v Corn Exch. Bank Trust Co., 267 NY 544; 2B Warren’s Negligence, Landlord and Tenant, § 6.01 et seq.).
Neither the Grand Union nor the executors seriously contest the applicability of these rules. However, they argue that the evidence adduced to show they had notice was insufficient as a matter of law. We cannot agree. Credible testimony was adduced that the hole was of such size as to be plainly visible, that the condition existed for at least 10 days to 2 weeks prior to the accident and that the driveway area was deteriorated. It was also shown that Grand Union employees often traversed the area and, thus, had ample opportunity to discover the defective condition and have the employer effect a repair. Additionally, it may be argued that because of the blocking of the sidewalk which patrons ordinarily would have been expected to utilize, Grand Union, in the exercise of reasonable care, should have taken additional measures to insure safe passage over the driveway. Moreover, insofar as the liability of the landlord is concerned it is pertinent to note that while he had the parking lot repaired, no effort was made to repair the driveway, which was originally built and laid at the same time, and had at least as much vehicular traffic; all of which when coupled with the trial testimony might reasonably have led the jury to find that the driveway was deteriorated and in a dangerous condition and, thus, that the landlord had constructive notice of that condition.
We turn then to the issue whether control over the premises was established. Grand Union argues that a 1948 easement agreement between the landlord and two other neighboring store owners, as tenants, transferred some control over the driveway to parties other than itself. Reliance is specifi *613 cally placed on paragraph 4 in which Steigler agreed to keep the premises and, expressly, the driveway in good repair for the use of the tenants. However, the argument overlooks the provisions of paragraph 3 of the same agreement which provides that it is "subject to” the 1946 lease between Grand Union, as tenant, and Steigler, as landlord.
Insofar as is pertinent here, the 1946 lease[2] provides that it covers the Grand Union store building and driveway "for the sole use of the tenant”. Thus, notwithstanding any contrary provisions in the 1948 easement agreement, it is clear that since that agreement was subject to the 1946 lease, Grand Union retained control of the driveway. Moreover, and significantly, paragraph 3 of the 1946 lease provides that: "[t]he Tenant covenants and agrees that it will make all necessary incidental repairs to the interior of the demised premises. All other necessary repairs the Landlord agrees to make * * * Should the Landlord neglect or refuse to make any such repairs * * * within a reasonable time after notice that the same are needed, the Tenant without liability or forfeiture of its term hereby demised may have such repairs made at the expense of the Landlord and may deduct from the rent the cost thereof.” Therefore, by the express terms of the lease, Grand Union had the right and, perforce, the control necessary to effect repair of the driveway and, thus, was properly found liable.
We now turn to the issue of the lessor’s liability to plaintiff.
Relying on our holding in Cullings v Goetz (256 NY 287, 290, supra) that "a covenant to repair does not impose upon the lessor a liability in tort at the suit of the lessee or others lawfully on the land in the right of the lessee”, the lessor argues that plaintiff’s evidence of the owner’s covenant to repair was insufficient to cast him in liability. Plaintiff asserts that De Clara v Barber S. S. Lines (309 NY 620) changed the Cullings rule, at least in cases where the lease expressly permits the landlord "to come and go upon the leased premises as he pleases for the purpose of inspection and repair” (p 630) and where there is the additional evidence, as there is here, that the landlord actually came upon the premises and effected repairs.
The present case falls somewhere between the two cited *614 cases. Here, the covenant to repair, implicitly at least, recognizes the landlord’s right of entry (see paragraph 3 of the 1946 lease where it provides that if the landlord does not effect repairs, the tenant may' do so) and the evidence at trial showed that the landlord actually made a substantial repair (to the rear parking lot). To this extent, then, this case is akin to De Clara. However, Grand Union also had the right to make repairs, a right not given the De Clara tenant, and the record is barren of any evidence that the landlord regularly made inspections or repairs, as did the De Clara landlord. Thus, the case is also distinguishable from De Clara and bears but some resemblance to Cullings where the plaintiff relied solely upon the covenant to repair to establish the lessor’s control. However, rather than decide which case should be considered controlling, the time has come, we think, to reevaluate our adherence to the Cullings rule and reappraise the modern trend toward assessing liability solely upon the basis of the covenant to repair (see Ann., 78 ALR2d 1238, 1252).
The effect of a lessor’s agreement to keep leased premises in repair has generated considerable scholarly discussion.[3] Historically, the majority rule has been that upon the landlord’s breach of the covenant to repair, the tenant obtained only an action in contract for the breach (see, e.g., Tuttle v Gilbert Mfg. Co., 145 Mass 169; Berkowitz v Winston, 128 Ohio St 611). It followed that third persons not parties to the contract had no right of action whatever against the landlord,[4] and were relegated to recovery against the tenant, or not at all (Cullings v Goetz, 256 NY 287, 292, supra). The rule was sustained on the rationale that the tenant, as occupier of the land, had control of its safety and if he so desired, could protect himself by excluding people from his property or by discriminating against those whom he believed would not look out for their own safety whereas the landlord had neither control nor possession, and his covenant to repair did not *615 reserve either to him (Cullings, supra, at pp 290-291; Harkrider, op. cit, 26 Mich L Rev 260, 383, 395). Also offered in support of the rule was the lack of privity of contract between the injured third party and the landlord (Cullings, supra, at p 293; City of Brooklyn v Brooklyn City R. R. Co., 47 NY 475, 483, 485).
These rationales no longer retain the vitality they may once have had. The doctrinal limitation of privity of contract in tort actions by third parties was born in the 19th century case of Winterbottom v Wright (152 Eng Rep 402) and was widely adopted (2 Harper and James, Torts, § 18.5). However, by the turn of this century the first cracks in the doctrine were evident (see Huset v Case Threshing Mach. Co., 120 F 865) and New York was in the vanguard of the attack (see MacPherson v Buick Motor Co., 217 NY 382). Indeed, by 1931, Chief Judge Cardozo was able to declare that "[t]he assault upon the citadel of privity is proceeding in these days apace” (Ultramares Corp. v Touche, 255 NY 170, 180). Subsequent decisions by this court proved the correctness of his perception (Greenberg v Lorenz, 9 NY2d 195 [child permitted recovery through father’s privity of contract]; Randy Knitwear v American Cyanamid Co., 11 NY2d 5 [remote purchaser of product permitted recovery]; Guarino v Mine Safety Appliance Co., 25 NY2d 460 [rescuer of product purchaser permitted recovery]). Thus, it came as no surprise that in Codling v Paglia (32 NY2d 330, 339) we eschewed "the temptation to devise more proliferating exceptions’-’ to the privity rule and instead overturned it, at least insofar as it applies to cases involving a claim of strict liability once described as breach of warranty. In so doing we recognized that " '[t]he policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentations outweighs allegiance to old and out-moded technical rules of law which, if observed, might be productive of great injustice’ ” (p 339, quoting Randy Knitwear, supra, at p 13). Similarly, in the case of harm occurring to third parties who have come upon property with the invitation or license of the occupier, and often with the knowledge and consent of the landowner, consideration must be given to protecting these persons from injury, rather than adhering to technical, outmoded rules of contract. As the Supreme Court of New Jersey had occasion to comment in the course of o overturning its privity of contract precedent in covenant-to-repair cases: "Under modern social conditions, the precept of privity is sterile *616 and no longer serves the interests of justice. And this apart from other influences, for the obvious reason that it is utterly unrealistic to say that when the head of a family leases premises and bargains for an agreement on the part of the lessor to maintain them in good repair, the parties do not recognize that the pact is in the interest and for the protection of members of his household and others who enter thereon in his right. It is likewise inconsistent with reality to suggest that the parties do not accept their mutual engagements with a full awareness that if the necessary repairs are not made, the safety of such persons will be endangered.” (Faber v Creswick, 31 NJ 234, 240.)[5]
Likewise the property control distinction made in De Clara, in all candor, appears to rest more on legal fiction than reality. One may ask: What measure of property control did the De Clara landlord actually possess that the Cullings landlord did not? Certainly, the fact that the De Clara lease gave the landlord the right to come and go did not transfer the power to exclude persons from the property or discriminate between who might be invited to enter. Nor, can it be said that by engaging in the right to inspect and repair the premises that the De Clara landlord acquired control of its safety. The landlord’s power was limited to the discovery and correction of found hazards. There, it could not insure that the property, and heavy equipment thereon, was being used in a safe manner or even that defects known to the tenant would be reported. In short, the landlord’s actual control could be said to have been more fictional than real. Moreover, to the extent that the determination might be said to rest on the control actually exercised by the landlord, the result is anamolous for it penalizes the landlord who takes steps to comply with his contractual duty to render the premises safe and in good repair, and immunizes from liability those landlords who do nothing and may actually be in breach of their contract.
The modern trend of decision is toward holding the lessor liable to his tenants or those upon the land with the tenant’s permission where the landlord has breached his covenant to repair (see Ann., 78 ALR2d 1238, 1252, supra)[6] Recognizing *617 that this rule is an exception to the general rule that a landlord is not liable for conditions upon the land after the transfer of possession (see Campbell v Elsie S. Holding Co., 251 NY 446; Restatement, Torts 2d, §§ 355, 356), the Restatement (Second) of Torts has formulated the following rule:
"A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor’s agreement would have prevented, and
(c) the lessor fails to exercise reasonable care to perform his contract.” (Restatement, Torts 2d, § 357.)
We overrule Cullings v Goetz (supra) and adopt the Restatement formulation as the law rule to be applied. The Restatement rule rests on a combination of factors which, we think, more accurately and realistically place an increased burden on a lessor who contracts to keep the land in repair: First, the lessor has agreed, for a consideration, to keep the premises in repair; secondly, the likelihood that the landlord’s promise to make repairs will induce the tenant to forego repair efforts which he otherwise might have made; thirdly, the lessor retains a reversionary interest in the land and by his contract may be regarded as retaining and assuming the responsibility of keeping his premises in safe condition; finally, various social policy factors must be considered: (a) tenants may often *618 be financially unable to make repairs; (b) their possession is for a limited term and thus the incentive to make repairs is significantly less than that of a landlord; and (c) in return for his pecuniary benefit from the relationship, the landlord could properly be expected to assume certain obligations with respect to the safety of the others (Restatement, Torts 2d, § 357, comment b; see Gallagher v St. Raymond’s R. C. Church, 21 NY2d 554, 557; see, also, Prosser, Torts [4th ed], § 63, p 410). We hold, therefore, that a landlord may be liable for injuries to persons coming onto his land with the consent of his lessee solely on the basis of his contract or covenant to keep the premises in repair.
Applying the formulation to this case, it is clear that the landlord is also liable to plaintiff. It is undisputed, of course, that plaintiff was on the land with the permission of Grand Union, that Steigler covenanted to keep the driveway in repair, that the disrepair created an unreasonable risk of harm to plaintiff, which performance of the covenant would have prevented, and that since Steigler had not even attempted to repair the driveway, he failed to exercise reasonable care to perform his contract. We conclude, therefore, that the executors are liable to plaintiff.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, with costs.

. Steigler died prior to trial and his executors were substituted as parties.

. The lease was renewed in December, 1964 and was in full force and effect at the time of the accident.

. (See Bohlen, Landlord and Tenant, 35 Harv L Rev 633; Bohlen, Fifty Years of Torts, 50 Harv L Rev 725, 747; Harkrider, Tort Liability of a Landlord, 26 Mich L Rev 260, 383, 392-400; Eldredge, Landlord’s Tort Liability for Disrepair, 84 U of Pa L Rev 467; 2 Harper and James, Torts, § 27.20; Prosser, Torts [4th ed], § 63.)

. However, this rule is not without exception. It has been held that where a landlord reserves the right to enter and make repairs, and a passerby (i.e., one outside the demised premises without the permission of landlord or tenant) is injured by a dangerous or defective condition upon the land, the landlord may be held liable (Appel v Muller, 262 NY 278).

. See Rampone v Wanskuck Bldgs. (102 RI 30) and Reitmeyer v Sprecher (431 Pa 284) which also overruled precedent and held that recovery in tort could be had against a landlord for breach of his covenant to repair.

. This is now the rule in at least 18 States (Collison v Curtner, 141 Ark 122; Scholey v Steele, 59 Cal App 2d 402; Davis v Marr, 160 Col 27; Scibek v O’Connell, *617 131 Conn 557; Propper v Kesner, 104 So 2d 1 [Fla]; Williams v Davis, 188 Kan 385; 2310 Madison Ave. v Allied Bedding Mfg. Co., 209 Md 399; Keiper v Anderson, 138 Minn 392; Zuroski v Estate of Stuckland, 176 Neb 633; Faber v Creswick, 31 NJ 234, supra; Lommori v Milner Hotels, 63 NM 342; Goodman v Fernald, 154 Ore 654; Reitmeyer v Sprecber, 431 Pa 284, supra; Rampone v Wanskuck Bldgs., 102 RI 30, supra; Merchants’ Cotton Press & Stor. Co. v Miller, 135 Tenn 187; Harvey v Seale, 362 SW2d 310 [Tex]; Estep v Security Sav. & Loan Soc., 192 Wash 432; Baum v Bohn Frei Mut. Bldg. & Loan Assn. 237 Wis 117). Several other States appear inclined toward the modern rule (Alaimo v Du Pont, 4 Ill App 2d 85; Hodges v Hilton, 173 Miss 343; Skelly Oil Co. v Darling, 375 P2d 917 [Okla]; Delphia v Proctor, 124 Vt 22). Indeed, one jurisdiction has even gone further and held that notwithstanding the absence of a covenant to repair or the retention of control over the premises, a landlord may be held liable for the failure to exercise reasonable care to keep the premises in good repair (Sargent v Ross, 113 NH 388).