■ GIORGIO DeVIZIO et al., Respondents, v HOBART CORPORATION et al., Defendants, and NESTMARK REALTY CORP., Appellant, et al., Third-Party Plaintiffs, et al., Third-Party Defendants.—Order and judgment (one paper) of the Supreme Court, Bronx County (Bertram Katz, J.), entered on September 4, 1987, which, *inter alia,* denied the cross motion by defendant-appellant Nestmark Realty Corporation for summary judgment pursuant to CPLR 3212 or, in the alternative, pursuant to CPLR 3211 dismissing the complaint, is unanimously reversed on the law to the extent appealed from and defendant-appellant's cross motion for summary judgment

pursuant to CPLR 3212 granted, without costs or disbursements.

This action involves a claim for damages arising out of personal injuries allegedly sustained by plaintiff Giorgio De-Vizio on July 23, 1981 when he received an electrical shock while operating a meat-grinding machine. The suit was commenced against Hobart Corporation, the machine's manufacturer; A-1 Globe Machine Distributors, which repaired and sold it to Riviera Ravioli, Inc., plaintiff's employer; defendant-appellant Nestmark Realty Corporation, the owner of the building in which the accident occurred and the lessor of Riviera Ravioli; and Vincent Starace & Sons Electrical Contractors, Inc., which had installed the electrical wiring on the premises in question. Following the joinder of issue and discovery proceedings, the Supreme Court granted the motions for summary judgment by Hobart Corporation and A-1 Globe Machine Distributors. The court, however, declined to grant Nestmark's cross motion for the same relief, concluding that: "The plaintiff was allegedly injured while employed by Riviera. Defendant Nestmark is the owner of the building where the incident occurred. Joseph Giordano, the vice-president and general manager of Riviera, is also the president of Nestmark. Plaintiff informed Giordano of the problem with the on/off button prior to the incident underlying this action. Plaintiff alleges that the electrical plug which was an instrumentality of his injury was installed by an electrical contractor at the order of Giordano, an officer of Riviera and of Nestmark. This court is persuaded that issues of fact exist as to the liability of defendant Nestmark."

The facts surrounding this lawsuit are as follows: Although the subject meat-grinding machine was internally wired to an electric motor, the cord and plug were to be supplied by the user. The grinder, moreover, was equipped with an on/off switch which was to be utilized in its operation. Riviera Ravioli acquired the machine in November of 1980 after it had already had several owners. Shortly thereafter, a mechanical malfunction developed, and repair work was performed at the behest of A-1 Globe Machine Distributors, which had guaranteed the machine's workmanship for three months. The grinder was returned in good condition to Riviera Ravioli in January of 1981, and no further difficulties with it were reported until the day before the accident when plaintiff, employed as a ravioli maker by Riviera Ravioli, noticed that the on/off button was not functioning and that he had to "connect and disconnect the plugs in order to stop the ma-

chine." At the end of his shift at either 3:00 or 5:00 P.M., he mentioned the problem to Joseph Giordano, who was the vice-president and general manager of Riviera Ravioli, as well as Nestmark's president. When plaintiff again attempted to operate the grinder the next morning, he was injured by an electric shock suffered in the course of connecting the plugs.

While Nestmark does not dispute that plaintiff advised Giordano that the on/off switch was not working, it denies having received any notice concerning the existence of a defective condition on the leased premises with respect to the electrical sockets or the plugs. In granting the motions for summary judgment by Hobart Corporation and A-1 Globe Machine Distributors, the Supreme Court apparently found that plaintiff's accident was not caused by an inoperative on/off button, and no appeal has been taken from that determination. Consequently, the only issue here is whether there was a defective condition on the premises of which Nestmark, as landlord, had actual or constructive notice. In that regard, Nestmark not only asserts that plaintiff provided no notice whatsoever as to either the electrical receptacle or the plugs but that the repair and maintenance functions on Riviera Ravioli's establishment were exclusively the obligation of Riviera Ravioli and that Nestmark has never performed any electrical work on those premises. In response to Nestmark's cross motion for summary judgment, plaintiff argued that prior to the accident he advised Giordano that the on/off button was not working properly and that the latter's position in both corporations renders it factually impossible for him now to disclaim notice of the alleged defect on behalf of Nestmark. Yet, since the Supreme Court evidently rejected plaintiff's contention that the on/off button was an instrumentality of the accident, and plaintiff is not challenging that ruling, he is now basing his claim against Nestmark solely on the theory that the electric shock was produced by a pigtail outlet which had been installed by Riviera Ravioli some years prior to the incident in question, which outlet is purportedly defective and/or in violation of the Administrative Code of the City of New York and a departure from prudent and standard electrical procedure.

An examination of the record herein clearly establishes that while plaintiff may have complained about the grinding machine's on/off switch, at no time did he inform Giordano or anyone else that there was a problem with the electrical receptacle or the plugs. Therefore, Nestmark, having received no actual notice of any defective condition on the premises,

can only be held liable if it possessed constructive notice of the supposed defect. As the Court of Appeals declared in *Gordon v American Museum of Natural History* (67 NY2d 836, 837), "[t]o constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it". In the instant situation, there is no evidence that the electrical system had ever malfunctioned in the past, and, except for plaintiff's unsupported conclusory allegation to that effect, there is also no proof that the electrical sockets or the wiring were defective, dangerous or had been negligently installed. Indeed, the particular Administrative Code provision alleged to have been contravened is never even cited, nor is it explained in other than general conclusory terms in what manner the electrical system and its connections were dangerous and/or defective. Similarly, there is nothing in the record to suggest that Nestmark knew, or with due diligence should have known, that the plugs were in any way defective. Thus, in the absence of proof that any purported defective condition on the premises was visible and long standing and without any indication as to how the Administrative Code was violated, it is irrelevant that Giordano was an officer of both the lessee Riviera Ravioli and the lessor Nestmark. Since plaintiff has failed to raise an issue of fact regarding the existence of constructive notice or a statutory violation, defendant Nestmark is entitled to summary judgment *(see, Putnam v Stout,* 38 NY2d 607; *Fischer v Battery Bldg. Maintenance Co.,* 135 AD2d 378; *Silver v Brodsky,* 112 AD2d 213). Concur—Murphy, P. J., Sullivan, Ross, Carro and Milonas, JJ.