John DeVEAU and Patricia DeVeau, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 90–CV–1157.

United States District Court, N.D. New York.

Sept. 16, 1993.

140

Maloney, Schell & Eisenhauer (Michael W. Schell, of counsel), Watertown, NY, for plaintiffs.

Gary L. Sharpe, U.S. Atty. N.D. New York (William Pease, Barbara E. Yunis, Asst. U.S. Attys., of counsel), Syracuse, NY, for U.S.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION.

The plaintiffs, John DeVeau and Patricia DeVeau, ("Plaintiffs"), filed suit pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, and 1346(b) alleging that the defendant, United States of America ("Defendant") was negligent. More specifically, plaintiffs claim that plaintiff John DeVeau ("Plaintiff") sustained personal injuries because the defendant failed to "repair, inspect, maintain, monitor, or keep the said premises and its walking areas in a manner that would provide reasonable and adequate safety to plaintiff John DeVeau, and others, and by failure to warn the public of a dangerous condition of which defendant had knowledge." (Complaint—¶ 10). Plaintiffs seek damages for his personal injuries and her loss of consortium. The defendant, in its answer, denied the material allegations in the complaint, and alleged as an affirmative defense that the plaintiff was comparatively negligent.

## II. *TRIAL.*

The court conducted a two day nonjury trial on May 3, and 4, 1993, in Watertown, New York. The following Memorandum–Decision and Order constitutes this court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. *FACTS.*

The defendant, through its agency the U.S. Postal Service, occupied and was responsible for the maintenance of a postal facility at Ellisburg, New York. It was built in 1976, and consisted of a one story building with a parking lot and sidewalk in front. (Plaintiffs' Exhibits "1" and "3"). The main entrance, and the only entrance for the public, consisted of a door which opens outward. Upon going through the door from the outside, a patron enters a room which is shaped like an inverted L with a stand-up desk on the immediate right and mailboxes at the far end. (Plaintiffs' Exhibits "2", "3", and "4"). A patron may proceed to the right to the stand-up desk, go straight ahead to the mailboxes, or turn left and go through an interior door to another room where a counter is located to buy stamps etc., or to see the postmistress. The vinyl floor in the inverted L shaped room was covered with two rugs. The two rugs were positioned so as to cover each leg of the inverted L, but left a nine inch gap between the two rugs. (Plaintiffs' Exhibits "3" and "4"). This gap exposed the vinyl floor directly in front of the outside door. (Plaintiffs' Exhibit "4"). The two rugs had been in this position since at least 1978. There is no record of anyone slipping or falling in the area of this "vinyl gap" prior to the plaintiff's accident of August 17, 1988.

The plaintiffs are husband and wife. Plaintiff was born on September 12, 1931, and presently has a life expectancy of seventeen years. Mrs. DeVeau was born on July 7, 1938. They live about three/fourths of a mile from the post office.

At the time of the accident, the plaintiff worked for New York Air Brake in Watertown as a supervisor. He often got oil on his shoes while working. It was his custom to visit the post office almost every day after work between 5:00 P.M. and when the post office closed at 5:30 P.M. Following his visits, the postmistress would often have to clean up black oil marks left behind from his shoes. However, she never talked to him about this problem. She was also aware of other patrons tracking in other substances such as cow manure. The plaintiff had never slipped and fallen during the year and a half prior to the accident when he entered the post office on those routine visits, nor had he ever complained about the care and maintenance of the building.

Plaintiff worked as usual on August 17, 1988. He was wearing work shoes that had a hard toe and rubber soles that were smooth. (Defendant's Exhibit "2"). During the course of that work day, he undoubtedly accumulated some hydraulic oil on the heels and soles of his shoes. It rained during the day, but it had stopped when he left work at approximately 4:30 P.M. However, the sidewalks and streets were still wet. He drove directly to the post office, and arrived at 5:25 P.M., parked, got out of his automobile, walked across the wet sidewalk, and entered the building. At that time, he had oil and/or water on the heels and/or soles of his shoes. Because it had been raining earlier in the day, the rugs and vinyl gap inside the door were damp.

The postmistress was on vacation that day, and the relief clerk was the only one on duty. She knew it had been raining that day. No signs were posted warning patrons of the damp floor or the position of the rugs.

The plaintiff opened the door, stepped in, and started to turn to his left in order to proceed to the interior door and the counter. As he did so, his first step was on the vinyl gap between the two rugs. As a result of moisture on his shoes or the moisture in the vinyl gap or both, he slipped and fell on his left hip. The fall caused his shoe to leave a black skid mark in the vinyl gap.

After his fall, the relief clerk found him lying in the area of the two rugs and the vinyl gap. She saw the black skid mark in the area between the two rugs (Plaintiffs' Exhibit "4"). Mrs. DeVeau was called and she arrived later with her son, Steven Con-

nelly, and attended to the plaintiff. Eventually, arrangements were made to transport the plaintiff to the hospital by ambulance.

The following day, August 18, 1988, the relief clerk completed and signed official U.S. Postal Service Accident Report (Plaintiffs' Exhibit "5"). In her narrative description of the accident, she stated, "Two rugs on floor, with about 9″ of tile showing between them. Skid marks left on floor where fell. Shoes wet and hit the tile between the two rugs on floor. Had been raining earlier. Front lobby—Ellisburg Post Office." This report was approved by the postmistress when she returned from vacation.

As a result of the fall, plaintiff sustained personal injuries to his left hip. At the House of Good Samaritan Hospital in Watertown, he came under the care of Dr. Richard Withington, an orthopedic surgeon. He was diagnosed as having suffered a closed intracapsular fracture of the left femoral neck requiring open reduction and internal fixation. He was confined to the hospital from August 17, 1988, to August 26, 1988. (Plaintiffs' Exhibit "8"). Upon his discharge, he used crutches and continued to use them until November 28, 1988, when he advanced to using only one crutch. His activities were severely restricted until he returned to work on January 31, 1989. He was in the naval reserve, and was unable to return to duty until January 19, 1989. He continued to walk with a slight limp, assisted by the use of a cane, until around the end of February 1989. (Plaintiffs' Exhibit "10").

The internal fixation is still in place to this date, and it is anticipated that it will not be removed unless problems arise in the future. He has a surgical scar in this left leg/hip area approximately twelve inches long. (Plaintiffs' Exhibit "6"). He cannot engage in any activity which would "jar" the hip, such as running, jogging, or climbing ladders. He is left with a mild to moderate permanent partial disability according to the treating physician. This has limited his recreational and other activities such as household chores, camping, gardening, walking, acting as a volunteer fireman, and maintaining apartments. The plaintiffs had no sexual activity for about five months after the accident. Plaintiff also required assistance in the bathroom and in other everyday duties following his discharge from the hospital. Plaintiff claims that his loss of earnings is $2,833.57. There are no remaining claims for medical expenses.

## III. DISCUSSION.

### A. Liability.

Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., the Government has waived sovereign immunity from suit for claims of property damage or personal injury caused by the "negligent or wrongful act or omission" of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); United States v. Muniz, 374 U.S. 150, 153, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805 (1963); Guccione v. United States, 847 F.2d 1031 (2d Cir.1988), reh'g denied, 878 F.2d 32 (2d Cir.1989), cert. denied, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); Hurwitz v. United States, 884 F.2d 684 (2d Cir.1989), cert. denied, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); Avakian v. United States, 739 F.Supp. 724, 730 (N.D.N.Y.1990). Since the alleged negligent acts occurred in New York, the law of New York is controlling. 28 U.S.C. § 2674.

In New York, the present standard of care owed by a landowner to someone lawfully on the premises consists of a single standard of care, that is, a duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition whereby foreseeability is the measure of liability. Basso v. Miller, 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976); see Scurti v. City of New York, 40 N.Y.2d 433, 434, 354 N.E.2d 794, 795, 387 N.Y.S.2d 55, 56 (1976); see also Bartolomeo v. Evangel Church of God, 169 A.D.2d 696, 697, 564 N.Y.S.2d 184, 185 (2d Dept.1991). The defendant has a duty to maintain his premises in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk. Basso, 40 N.Y.2d at 241, 352 N.E.2d at

872, 386 N.Y.S.2d at 568; *Gordon v. American Museum of Natural History*, 113 A.D.2d 701, 703, 493 N.Y.S.2d 464, 466 (1st Dept. 1985), *rev'd on other grounds*, 67 N.Y.2d 836, 492 N.E.2d 774, 501 N.Y.S.2d 646 (1986).

██  To prove negligence on the part of the defendant, plaintiff must establish that there was a dangerous condition and that either the defendant affirmatively created the dangerous condition or had notice, actual or constructive, of same. *Lowrey v. Cumberland Farms, Inc.*, 162 A.D.2d 777, 778, 557 N.Y.S.2d 689, 690 (3rd Dept.1990); *Edwards v. Terryville Meat Co.*, 178 A.D.2d 580, 580, 577 N.Y.S.2d 477, 478 (2d Dept.1991). Additionally, to impose liability upon the defendant, plaintiff must prove that after knowledge or notice was received, the defendant had a reasonable opportunity to correct the dangerous condition. *Putnam v. Stout*, 38 N.Y.2d 607, 612, 345 N.E.2d 319, 321, 381 N.Y.S.2d 848, 850 (1976); *Doyle v. Streifer*, 34 A.D.2d 183, 310 N.Y.S.2d 165 (3rd Dept. 1970). In other words, there must be evidence tending to show the existence of a dangerous or defective condition, and that the defendant either created the condition or had actual or constructive knowledge of it and failed to correct the condition within a reasonable time thereafter. *Lowrey*, 162 A.D.2d at 778, 557 N.Y.S.2d at 691; *see also Lewis v. Metropolitan Transp. Authority*, 64 N.Y.2d 670, 474 N.E.2d 612, 485 N.Y.S.2d 252 (1984), *aff'g*, 99 A.D.2d 246, 472 N.Y.S.2d 368 (1st Dept.1984); *Payne v. Big V Supermarkets, Inc.*, 140 A.D.2d 422, 528 N.Y.S.2d 123 (1988); *Torri v. Big V of Kingston, Inc.*, 147 A.D.2d 743, 537 N.Y.S.2d 629 (1989).

██  The "condition" at issue in this case is the placement of the two rugs, which were in such a position that there existed a nine inch vinyl gap located directly inside the front door. This condition was created by the defendant. Therefore, since there was no physical reason why the two rugs could not

have been placed together, thereby eliminating the vinyl gap,[1] its placement by the defendant created the condition. This condition was known to the defendant for over ten years.

The question then becomes whether this was a "dangerous condition" so as to require the defendant to either correct same or warn patrons. The court finds that it was such a dangerous condition. The very purpose of two rugs is clear from the defendant's own guidelines:[2]

> Mats should be placed in ... entrances during rainy ... weather to reduce slipping....

(Plaintiffs' Exhibit "12"—U.S. Maintenance Handbook).

> Customer areas also deserve special consideration. *The placement or lack of mats and rugs are examples of common safety hazards contributing to customer injuries....* Rubber mats or all-weather mats should be placed at entrances to the facility, including lobby areas, when bad weather develops.

(Plaintiffs' Exhibit "16"—Postal Service Handbook) (emphasis added). The rugs are to be arranged to prevent slipping. (Plaintiffs' Exhibit "18"—U.S. Post Office Inspection Checklist). Everyone acknowledges that the vinyl floor was much more slippery than the rugs. In fact, the rugs were not slippery at all. The very purpose of placing the two rugs in the room was to prevent patrons from stepping on the vinyl floor either while the floor was wet, or while they had moisture or a foreign substance on their shoes. If a patron could be prevented from stepping on the vinyl floor, they would not slip and fall. This is particularly true in Upstate New York where it was acknowledged by the post mistress that even on dry days, patrons enter the premises with foreign substances on their feet.[3] It is even more

---

1. This would have covered the entire area inside the door so as to cause all entering patrons to step on the rugs and not on the exposed vinyl gap.

2. The internal rules of the defendant are admissible and may be considered as evidence of what

constitutes reasonable care. *Kush v. City of Buffalo*, 59 N.Y.2d 26, 449 N.E.2d 725, 462 N.Y.S.2d 831 (1983).

3. In fact, as mentioned above, the postmistress testified that she often had to clean up black oil marks left behind from plaintiff's shoes. She never talked to him about this problem, however.

true, at times such as the day of the accident, when it had been raining.

The defendant contends that the position of the rugs would only become a dangerous condition if the vinyl gap was wet, and if the defendant had actual or constructive notice of any wetness. There is some evidence that the vinyl floor between the rugs was moist or damp at the time of the accident. The defendant did have constructive notice that the area of the rugs and vinyl gap might have been wet because it had been raining during the day, and it was clearly foreseeable that patrons would carry moisture in and out on wet shoes or clothing. *See Padula v. Big V Supermarkets, Inc.,* 173 A.D.2d 1094, 1096, 570 N.Y.S.2d 850, 851 (3rd Dept.1991). However, whether or not the vinyl gap was wet or dry at the time of the accident is immaterial. It was still a dangerous condition that was created by the defendant. In view of the fact that (1) the purpose of the rugs was to prevent accidents such as the one that occurred to the plaintiff; (2) vinyl floors are slippery and the rugs are not; (3) defendant had knowledge that persons entered all the time with water and foreign substances on their feet; (4) the condition was easily correctable by placing the two rugs together; and (5) a review of the photographs in plaintiffs' exhibits "3" and "4", clearly demonstrate that it is reasonable and foreseeable that if you put rugs in front of the entranceway to prevent patrons from slipping, you do not leave a vinyl gap where a patron will be likely to take his or her first step.

■ Defendant argues that it had no prior accidents in the area of the accident, or any complaints about the positioning of the rugs, and is therefore not liable. The dangerous condition was created by the defendants and, therefore, it had knowledge of the vinyl gap. There is, then, no requirement that plaintiff prove any actual or constructive notice of the dangerous condition on behalf of the defendants. *Fink v. Board of Educ. of the City of New York,* 117 A.D.2d 704, 705, 498 N.Y.S.2d 440, 441 (2d Dept.1986) (*citing Cook v. Rezende,* 32 N.Y.2d 596, 300 N.E.2d 428, 347 N.Y.S.2d 57 (1973)). Therefore, the defendant's personnel at the post office on a full time basis did not need a complaint from a patron to correct the situation. The fact that there were no prior accidents simply means that the defendants had been very fortuitous in the past, but their "luck ran out" on August 17, 1988. If you create a dangerous condition, you are not immune from liability for the first accident, even if it happens years after the dangerous condition has been created. *Burton v. State of New York,* 90 A.D.2d 585, 586, 456 N.Y.S.2d 126, 127–28 (3rd Dept.1982) ("[T]he fact that there were no reported prior accidents at this scene over a period of many years does not, ... provide an escape from liability....") It is like harboring an admittedly vicious dog. The owner is not entitled to a "free first bite". In a similar fashion, a negligent landowner who creates a dangerous condition does not get a "free first accident".

■ The defendant relies upon the cases of *Madrid v. City of New York,* 42 N.Y.2d 1039, 369 N.E.2d 761, 399 N.Y.S.2d 205 (1977), *aff'g,* 53 A.D.2d 517, 383 N.Y.S.2d 621 (1st Dept.1976),[4] and *Spagnolia v. United States,* 598 F.Supp 683 (W.D.N.Y.1984).[5] These cases are, however, distinguishable. In both cases, the courts held that the failure to use mats or rugs did not necessarily constitute negligence. In this case, the alleged negligence was not the failure to use rugs,

---

**4.** In *Madrid,* it was the customary practice of Bellevue Hospital to place a mat at the entranceway on rainy days. However, on the day of the slip and fall, despite the rain, no mat had been placed at the entranceway. The Court of Appeals held that since there was no evidence that an inherently dangerous condition existed, or that there had been a sufficient opportunity to remedy any alleged defective condition, no liability attached to the hospital. "In the absence of any showing of notice to or lack of due care by respondents, the court below properly concluded that plaintiff had failed to make out a prima facie case." *Id.* at 1039, 369 N.E.2d 761, 399

N.Y.S.2d at 205. Unlike *Madrid,* the defendant herein created a dangerous condition by failing to act reasonably.

**5.** In *Spagnolia,* the evidence of negligence was even weaker than the plaintiff's case in *Madrid.* The plaintiff in *Spagnolia,* slipped and fell in the interior of the post office at the customer service counter. There was, however, a mat at the entranceway to the post office, "[p]resumably decreas[ing] the amount of moisture brought in by customers." *Id.* at 686 n. 2.

but positioning of the rugs in such a manner as to create a dangerous condition. The defendant may not have been required to place rugs over the vinyl floor but once it does, it must do so in a reasonably safe manner. *Keir v. State of New York,* 188 A.D.2d 918, 919, 591 N.Y.S.2d 621, 622 (3rd Dept.1992). This is symbolic of the old saying, "If you are going to do something, do it right, or don't do it at all." The absence of rugs may not have created a dangerous condition because the situation would have been open and obvious to all patrons. *See Thornhill v. Toys "R" US Nytex, Inc.,* 183 A.D.2d 1071, 1072–73, 583 N.Y.S.2d 644, 645 (3rd Dept.1992); *Morell v. Peekskill Ranch, Inc.,* 104 A.D.2d 492, 494, 479 N.Y.S.2d 241, 244 (2d Dept.1984) (Rubin, J., dissenting), *rev'd, adopting op. of J. Rubin,* 64 N.Y.2d 859, 476 N.E.2d 645, 487 N.Y.S.2d 319 (1985). However, in this case, it was the affirmative act of positioning the two rugs in such a negligent manner so as to create a dangerous condition to unsuspecting patrons that created liability as against the defendant. *See Van Stry v. State of New York,* 104 A.D.2d 553, 555, 479 N.Y.S.2d 258, 261 (2d Dept.1984) (In *Madrid,* there was no showing that a dangerous condition persisted over time, or that the defendant had notice, actual or constructive, of the dangerous condition.)[6] Defendant created what appeared to be a safe, dry place for customers to enter the post office, but in fact, the entranceway was dangerous.

■ Finally, the dangerous condition was clearly the proximate cause of this accident. *Solomon v. City of New York,* 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985). The plaintiff fell because he stepped on the area of vinyl floor between the two rugs with moisture on the bottom of his shoe. This was an accident waiting to happen. If the two rugs had been placed together, he would have stepped on a rug and he would not have fallen because the rugs were specifically designed to prevent such accidents. There would have been no accident. Stated another way, if the rugs were placed together and plaintiff had still fallen, it would have been entirely his own fault and there would have been no negligence on the part of the defendant and, of course, no proximate cause.

■ Therefore, the defendant is guilty of negligence and that negligence was a proximate cause of the accident. The next issue is whether the plaintiff was guilty of comparative negligence which was also a proximate cause of the accident and his own injuries. N.Y.Civ.Prac.L. & R. § 1411 (McKinney 1976); *Lamphear v. State of New York,* 91 A.D.2d 791, 791, 458 N.Y.S.2d 71, 72 (3rd Dept.1982). He was. He should have been familiar with the position of the two rugs with the vinyl gap at the entrance to the post office, having entered it on almost a daily basis for over a year and a half. He should also have been aware that he had moisture on his shoes—either water or oil. He should have exercised extra caution. He did not. When he entered the building, he did not look down at the floor. Under the circumstances, he did not exhibit the care that would be expected of a reasonably prudent man, and therefore, his actions in negligently stepping on the vinyl gap contributed to the accident.

However, the primary responsibility rests with the defendant. The defendant created the dangerous condition and should have recognized same and made the simple correction. The plaintiff was entitled to rely on defendant to not create such a dangerous condition. In other words, he was entitled to have the "rugs ... secured and arranged to prevent slipping." (U.S. Post Office Safety and Health Inspection Checklist, Ellisburg Post Office dated May 18, 1993—Plaintiffs' Exhibit "19"). The rugs were secured but not properly arranged. The court finds that the accident was caused 85% as the result of the negligence of the defendant, and 15% as the result of the comparative negligence of the plaintiff.

**6.** It should be noted that both the *Madrid* and *Spagnolia* courts held that it was "not necessarily" negligent to fail to provide rugs over vinyl flooring at entranceways to a public building. With the known weather in this area, it is this court's opinion that such rugs are required, especially in view of the relative minimal cost as opposed to the cost associated with personal injuries. This would be especially true in a post office where many of the patrons are elderly and would have a much greater tendency to slip and fall thereby sustaining serious injuries.

## IV. *DAMAGES.*

For his injuries, the plaintiff was damaged in the sum of $110,000 for past pain and suffering; $34,000 for future pain and suffering; and $2,833.57 for lost earnings for a total of $146,833.57. The plaintiff Patricia DeVeau was damaged in the sum of $16,500 for past loss of consortium, and $6,800 for future loss of consortium for a total of $23,-300. These amounts are reduced by 15%, the amount of the plaintiff's comparative negligence. N.Y.Civ.Prac.L. & R. § 1411 (McKinney 1976).

## V. *CONCLUSION.*

Therefore, it is ORDERED that

1. Plaintiff John DeVeau is awarded the sum of $124,808.55;

2. Plaintiff Patricia DeVeau is awarded the sum of $19,805.00; and

3. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.