Gabriel D. **DUCREPIN**, Plaintiff,

v.

**UNITED STATES of America**, Defendant.

No. 95 CV 5331(CLP).

United States District Court,
E.D. New York.

March 19, 1997.

R. Douglas Herbert, New York City, for Plaintiff.

Zachary W. Carter, United States Attorney, Brooklyn, NY (Jennifer C. Boal and Richard M. Molot, Assistant U.S. Attorneys, of counsel), for Defendant.

## OPINION AND ORDER

POLLAK, United States Magistrate Judge:

On December 26, 1995, plaintiff Gabriel D. Ducrepin brought suit against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq.*, seeking damages for injuries allegedly incurred on July 22, 1992, when he fell while playing basketball on a court at the Gateway National Recreation Area. Plaintiff claims that defendant United States, which owned and controlled the basketball court, was negligent in failing to maintain, inspect and repair the basketball court, or to take the necessary precautions to prevent the development of the defect or dangerous condition—allegedly, a crack and hole in the surface of the court—which caused plaintiff to fall and sustain the claimed injuries.

On February 5, 1997, the issue of liability[1] was tried on consent of both parties before

---

1. The parties stipulated to bifurcate the trial on liability and damages, with the damages phase held in abeyance pending this Court's determination on liability.

this Court. Based on the evidence presented at trial and upon consideration of the legal arguments presented, this Court makes the following findings of fact and conclusions of law.

### Evidence Presented At Trial

### Pre-trial stipulations

Prior to trial, the parties stipulated that on July 22, 1992, plaintiff fell while playing basketball on a basketball court located at the Gateway National Recreation Area, Jacob Riis Park (the "Park"), Breezy Point Unit. It was further stipulated that on July 22, 1992, defendant owned and controlled the basketball court where plaintiff fell.

### Plaintiff's Case

Plaintiff, a 40 year old male, testified at trial that on July 22, 1992, he drove to the Park, arriving at the basketball court at around 3:00 p.m., where approximately nine people were shooting baskets at one end of the court. Plaintiff voluntarily began to shoot baskets with them and eventually became involved in a full-court game of basketball.

Although plaintiff's testimony was inconsistent on whether and how many times he had previously played on this particular basketball court,[2] this Court finds that plaintiff had played on this basketball court on several occasions prior to the date of the accident. Further, plaintiff testified that "a few days" before the accident, he had observed "a few cracks on the pavement" under the basket at that end of the court where he ultimately fell, but he did not report the cracked pavement to anyone at the Park because he "didn't think it was necessary."

Plaintiff testified that after playing for approximately one-half hour without incident,

he got possession of the ball and started his drive toward the basket when he was approximately 18–20 feet away. He further testified that when he was approximately ten feet away from the basket, he stopped and jumped up to take his shot. According to plaintiff's testimony, an opposing player was approximately "a foot or two away" from plaintiff when he jumped to take his shot, but the other player did not touch the plaintiff. As he came down from his shot, plaintiff testified that he placed the bottom right side of his right foot into a hole in the cracked pavement. He testified that he heard "a loud pop," and fell forward hitting his knee on the pavement and landing on his right hand in an effort to protect himself. He testified that his foot was in a hole, approximately an inch or an inch and a half deep and "about the size of [his] head" in width. He testified that he had never noticed the hole there before he fell.

According to plaintiff's testimony, two members of the Park Police arrived approximately five minutes after the accident and stayed with him for twenty-five to thirty minutes until the ambulance arrived. He testified that although the Park employees spoke to the other players, he did not know if they wrote anything down because he was lying on the pavement in pain. He was then taken to the hospital by ambulance.

During the course of his testimony, plaintiff introduced, without objection, three 3x5 inch photographs of the basketball court where he fell. According to plaintiff's testimony, the photographs were taken three days after the accident.

On cross-examination, plaintiff admitted that he had been playing basketball for many years since high school in 1975, and that he was aware from his reading and from watch-

---

2. Plaintiff initially testified on direct examination that he had been to the Park, which has several basketball courts, approximately ten times before the date of his injury. He later testified on direct that while he had previously been on the basketball court in question prior to the incident, he had only played half court on the other side of the court. Moments later in the direct examination, he denied ever playing basketball on that court prior to the date of his injury. He then denied playing any half court games at the Park

courts prior to the date of his injury. He later testified that he did play a half-court game on the court in question three to four times before the date of his injury, but only on the other side of the court. Finally, on cross examination, plaintiff again denied playing on the court in question before the date of his injury but then admitted to playing on that court about ten times, but "most likely" half-court games on the other side of the court.

ing professional and college basketball on television that people can fall and get hurt while playing basketball. He further admitted that during his deposition, he testified that he had played basketball at the Park almost every other day for two months prior to the incident.

He was also cross-examined regarding his knowledge of the existence of the hole. Defendant's counsel pointed out that, contrary to his testimony on direct, plaintiff had given the following testimony at his deposition:

QUESTION: Had you ever seen that crack or the hole when you played in the park on other days?

ANSWER: Yes, I seen it before.

Plaintiff explained that he meant that he had seen the cracks before, but insisted that he never saw the hole prior to the day of the accident.

When asked if he had measured the depth of the crack or the hole, plaintiff testified that he had not, but he had observed his investigator measuring it. Counsel for defendant then pointed out that when asked at his deposition if he was aware of anyone measuring the cracks or the hole, plaintiff had testified that he didn't know.[3] Thus, it was unclear whether anyone had measured the hole and determined it to be one to one and a half inches deep. There was also confusion as to whether the hole was located to the side of the crack or in the middle of the crack. Moreover, the markings by plaintiff on the various photographs entered into evidence also differed somewhat from picture to picture.

Finally, during cross-examination, defendant introduced the hospital record from Peninsula Hospital Center in Far Rockaway, N.Y., where plaintiff was taken by ambulance after the fall.[4] According to the notes of the orthopedic resident, plaintiff stated that "he was playing basketball today & landed R [right] foot on another person's foot and de-scribes an inversion type injury." At trial, plaintiff denied that he told the doctor this and denied that he landed on another player's foot.

*Defendant's Case*

The defendant presented two witnesses at trial. The first witness, Edwin Roessler, testified that in July 1992, he was employed as lead park technician for first aid, where, among other duties, he supervised the Park's emergency medical technicians ("EMTs"). He testified that on July 22, 1992, he and another Park EMT, John Carbone, responded to the Bay 5 basketball courts, where they found the plaintiff seated on some aluminum bleachers in an area by the basketball courts.

According to Mr. Roessler, while Mr. Carbone attended to plaintiff, Mr. Roessler examined the area of the basketball court where plaintiff had indicated his injury occurred. Mr. Roessler testified that he saw nothing significant enough to cause a fall or to cause him concern. He admitted that he saw the "slight crack" in the pavement but considered it "minor." On cross-examination, he stated that he saw no hole at the time.

Following the incident, Mr. Carbone prepared the "input screen" of an incident report, which Mr. Roessler reviewed and signed. In the report, Mr. Carbone and Mr. Roessler classified the type of accident/incident as an "03," which signifies "Fall From Different Level." Mr. Roessler explained that he selected that particular code based on plaintiff's description that he had jumped up and was coming down from a different level when he was injured. Mr. Roessler further testified that the physical/environmental section of the report bears the code "00", signifying "no physical environment factor." He explained that he did not mention the crack in his report because "it wasn't worthy of note."

---

3. Plaintiff attempted to explain this discrepancy by stating that he understood the examiner at his deposition to be asking whether he, the plaintiff, had measured the hole. However, the question asked immediately prior to that question had in fact been whether plaintiff had measured the hole.

4. The medical records were admitted over the objection of plaintiff's counsel that they were not relevant to the liability phase of the trial.

The government also presented the testimony of Brian Collier, who was serving at the time of the incident as a maintenance mechanic foreman, responsible for the maintenance of the basketball court at issue. He testified that prior to the opening of the Park around Memorial Day, a regular maintenance check is done of all the basketball courts. Park maintenance personnel continue to check on a periodic basis during the season for obvious safety hazards, such as broken glass, potholes, and "severe" cracks that pose a safety problem. Based on a review of his records, he could find no work orders relating to repairs for the basketball court in question during the time of the incident.

*Findings of Fact and Conclusions of Law*

[1–4] Under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), tort liability for an accident based on the alleged negligence of an employee of the United States is governed by the laws of the state where the accident occurred—in this case, New York. *See Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962); *Grant v. United States,* 271 F.2d 651, 654 (2d Cir. 1959). Under New York law, the plaintiff must establish three elements in order to prevail on a negligence claim: 1) that defendant owed plaintiff a duty of care; 2) that defendant breached that duty; and 3) that the breach was the proximate cause of plaintiff's injury. *See Gardner v. United States,* 896 F.Supp. 89, 91 (N.D.N.Y.1995). As part of his *prima facie* case, the plaintiff must show that a defective or dangerous condition existed, and that the United States either created the condition or had actual or constructive notice of the condition and failed to repair or take necessary precautions regarding the condition. *Id.; see also Hammond–Warner v. United States,* 797 F.Supp. 207, 209–10 (E.D.N.Y.1992); *Benware v. Big v. Supermarkets, Inc.,* 177 A.D.2d 846, 847, 576 N.Y.S.2d 461, 462–63 (3d Dep't.1991); *Farrar v. Teicholz,* 173 A.D.2d 674, 676, 570 N.Y.S.2d 329, 330 (2d Dep't.1991); *Lowrey v.*

*Cumberland Farms, Inc.,* 162 A.D.2d 777, 778, 557 N.Y.S.2d 689, 690 (3d Dep't.1990); *Putnam v. Stout,* 38 N.Y.2d 607, 612, 381 N.Y.S.2d 848, 850, 345 N.E.2d 319, 322 (1976). Even if a plaintiff can establish constructive or actual notice, the defendant will only be liable if it can be shown that the defendant failed to show reasonable care in attempting to remedy the defective condition. *Hammond–Warner v. United States,* 797 F.Supp. at 210–11.

### 1. Plaintiff Failed to Establish A Dangerous or Defective Condition

Based on the evidence presented during the trial, including the photographs of the basketball court where the injury allegedly occurred, as well as the testimony of Mr. Roessler, who examined the surface of the basketball court immediately following the accident, this Court finds that plaintiff has failed to carry his burden of showing the existence of a dangerous or defective condition.[5]

To the extent that a defect in the form of a crack or hole existed in the surface of the basketball court, this Court finds that the defect was so slight or minor a defect that it could not constitute a hazardous condition nor be deemed negligence given the frequent use of the basketball courts by others without incident. *See, e.g., Lewis–Kures v. Edward R. Walsh & Co.,* 102 F.2d 42, 45 (2d Cir.) (holding that a crack measuring at most one inch in width and three quarters of an inch in depth in a step, even if longstanding, was "so slight a defect that continued use of the steps should be held as a matter of law not to constitute negligence"), *cert. denied,* 308 U.S. 596, 60 S.Ct. 132, 84 L.Ed. 499 (1939); *see also Stein v. Trans World Airlines,* 25 A.D.2d 732, 268 N.Y.S.2d 752, 753 (1st Dep't.1966) (holding that evidence of use of an area by others is persuasive evidence of whether a given condition in that area can be classified as dangerous).

---

5. There was also a question raised by the evidence submitted at trial as to whether plaintiff even injured his leg landing on this alleged hole or crack or whether, as the Hospital records suggest, plaintiff actually injured himself landing on another player's foot. Since, as set forth below, this Court finds that plaintiff failed to establish the other elements of the claim, there is no need to resolve this issue of proximate causation.

### 2. Plaintiff Failed to Establish Actual or Constructive Knowledge

■■■ This Court further finds that, apart from the trivial nature of the defect, plaintiff has failed to establish constructive or actual notice of the defect on the part of defendant. A defendant has actual notice of a defect if it created the defect or gained actual knowledge of the defect's existence. *See McHale v. Westcott,* 893 F.Supp. 143, 148–49 (N.D.N.Y.1995) (citing *Torri v. Big V of Kingston, Inc.,* 147 A.D.2d 743, 744, 537 N.Y.S.2d 629, 631 (3d Dep't.1989)). A defendant has constructive notice of a defect if the defect is "visible and apparent" and "in existence for a sufficient period of time before the accident so that the defendant could discover and remedy it." *Id.* (citing *Hammond–Warner v. United States,* 797 F.Supp. at 211).

Here, not only did the government witnesses credibly testify that the defect was trivial and not visible or apparent, but indeed, plaintiff's own testimony in this regard is conflicting. At one point during the trial, plaintiff testified that he was only aware of the crack, but not the hole. However, his deposition testimony suggests that he had noticed both the hole and the crack on a prior occasion. In any event, plaintiff never reported either condition to the Park Service department, nor did anyone discover or report any problem with the basketball court during the regular service inspections conducted by the Park maintenance crew. Indeed, this Court credits the testimony of both Mr. Roessler and Mr. Collier that they did not observe any defect on the basketball court and that no requests for maintenance were issued with respect to this particular basketball court. This Court therefore finds that plaintiff has failed to establish constructive or actual notice of the defect on the part of defendant. *See McHale v. Westcott,* 893 F.Supp. at 148–49 (holding that plaintiff had failed to establish defendant's notice of allegedly defective stairs, where the stairs were unmodified by the defendant, the defendant conducted annual inspections but never discovered the defect, no complaints were ever filed about the stairs prior to plaintiff's injury, and plaintiff failed to notice the defect despite using the stairs once a week for two years).

### 3. Plaintiff Assumed the Risk of Injury by Playing Basketball

■■■ Apart from plaintiff's failure to establish all of the necessary elements of the offense, this Court holds that, in any event, plaintiff assumed the foreseeable risk of injury by playing basketball on this court. It is well-settled that individuals who voluntarily engage in sporting activities " 'have consented by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation.' " *Pascucci v. Town of Oyster Bay,* 186 A.D.2d 725, 726, 588 N.Y.S.2d 663, 664 (2d Dep't.1992) (quoting *Turcotte v. Fell,* 68 N.Y.2d 432, 439, 510 N.Y.S.2d 49, 502 N.E.2d 964 (1986)). Indeed, plaintiff's identity and purpose for being at the location are factors that can be considered in determining what reasonable care would be under the circumstances. *Paulison v. Suffolk County,* 775 F.Supp. 50, 53 (E.D.N.Y.1991). If the risks of the activity are obvious and fully comprehended, then plaintiff has consented to them and recovery is barred. *Pascucci v. Town of Oyster Bay,* 186 A.D.2d at 726, 588 N.Y.S.2d at 664.

■■■ Here, the evidence produced at trial established that plaintiff had played basketball in the Park on numerous occasions prior to the date of the accident, including games on this very basketball court on over ten prior occasions. Not only was he aware that the surface of the court was not the equivalent of a smooth and even indoor basketball court, but he was, by his own admission, aware of at least the crack in the surface of the court. That assumption of risk on his part bars recovery. *See Reilly v. Long Island Junior Soccer League,* 216 A.D.2d 281, 282, 627 N.Y.S.2d 784, 785 (2d Dep't.1995) (denying liability for injuries sustained on a muddy soccer field, where plaintiff was an experienced soccer player who had played in poor weather and on the very same field on many prior occasions); *Gonzalez v. City of New York,* 203 A.D.2d 421, 422, 610 N.Y.S.2d 569, 570 (2d Dep't.1994) (denying recovery where plaintiff acknowledged that he had

seen the defect prior to the accident). In this case, the evidence also shows that plaintiff voluntarily decided to play basketball on defendant's court. It is well-established that defendant was only required to "exercise reasonable care under the circumstances to prevent injury to those who engaged in the [basket]ball game." *Scaduto v. State of New York*, 86 A.D.2d 682, 683, 446 N.Y.S.2d 529, 530 (3d Dep't) (citing *Basso v. Miller*, 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976) and *Scurti v. City of New York*, 40 N.Y.2d 433, 387 N.Y.S.2d 55, 354 N.E.2d 794 (1976)), *aff'd*, 56 N.Y.2d 762, 452 N.Y.S.2d 21, 437 N.E.2d 281 (1982). As in *Scaduto*, plaintiff assumed the dangers of the game, which here included the potential for landing awkwardly when jumping to shoot the ball. Like the state in that case, the United States was "not required to provide a terrain that was perfectly level." *Id.* at 683, 446 N.Y.S.2d at 530.

## CONCLUSION

In conclusion, this Court holds, based on the preponderance of the evidence, that plaintiff has failed to establish negligence on the part of the defendant and orders judgment in favor of the defendant.

**SO ORDERED.**