Louise McHALE and James McHale, Plaintiffs,

v.

Alexandra WESTCOTT and United States of America, Defendants.

Alexandra WESTCOTT, Third–Party Plaintiff,

v.

UNITED STATES of America, Third–Party Defendant.

Civ. A. No. 93–CV–915.

United States District Court, N.D. New York.

July 19, 1995.

Williamson, Clune & Stevens, Ithaca, NY, for plaintiffs (Robert J. Clune, of counsel).

The Pinnisi Law Firm, Ithaca, NY, for defendant Alexandra Westcott (Michael D. Pinnisi, of counsel).

Thomas J. Maroney, U.S. Atty., N.D.N.Y., Syracuse, NY, for the U.S. (William F. Larkin, Asst. U.S. Atty., of counsel).

## MEMORANDUM DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

In this personal injury action involving a United States Post Office in Franklin, New York, defendant United States of America (the "government") has moved for summary judgment against plaintiffs Louise and James McHale. Westcott has moved for summary judgment against the McHales and for indemnification against the government. In addition to opposing the motions for summary judgment, the McHales have cross-moved against the government for payment of their expert witness fee. Because I find that plaintiffs failed to establish a prima facie case for negligence or otherwise raise a material issue of fact, I grant defendants' motions for summary judgment and dismiss the complaint. Westcott's cross-motion seeking indemnification from the government is dismissed as moot. The government's cross-claim against Westcott seeking indemnification also is dismissed as moot. Finally, plaintiffs' motion against the government for payment of expert witness fees is granted.

### BACKGROUND

Although the procedural history of this litigation is somewhat complicated, the underlying facts of the action are simple.[1]

---

**1.** The government correctly notes that plaintiffs failed to submit a statement of the material facts as to which they contend there is a genuine issue. According to the Local Rules of Practice for the

Plaintiff Louise McHale was injured on September 15, 1992, when she fell on the steps of the U.S. Post Office in Franklin, New York. The accident took place as she was leaving the post office between 2 p.m. and 2:30 p.m. on a dry, sunny day. Although the stairs had a railing, Mrs. McHale does not recall whether she used the railing when she fell. Mrs. McHale did not notice any objects or defects on the steps that may have contributed to her fall. The stairs and railing are approximately 40 years old and unmodified by either defendant. The property owner testified in her deposition that she never received any complaints or requests to repair concerning the stairs. Postmaster Beverly Jackson testified that she received no complaints about the stairs during her tenure of March 1984 through August 1992. Ms. Jackson's successor also received no complaints about the stairs until the time of Mrs. McHale's accident.

The post office building currently is owned by defendant Westcott, who purchased the property in 1980. Since 1958, the government leased this space for a post office, and it currently pays rent of $220 per month. Westcott also owns and leases an apartment located above the post office. A lease between Westcott and the government dated June 1, 1987, states in relevant part:

> The Lessor shall, except as otherwise specified and except for damage resulting from the act or negligence of Postal Service agents or employees, maintain the demised premises in good repair and tenantable condition. If the leased premises or any part thereof become unfit for use for the purposes for which leased, the Lessor shall put the same in satisfactory condition, as determined by the Postal Service, for the purposes for which leased. If Lessor fails to make repairs or otherwise restore the premises to tenantable condition within a reasonable time after receipt of notice from the Contracting Officer, the Postal Service shall have the right to perform the work, by contract or otherwise, and withhold the cost thereof from payments due or to become due under this contract.

General Conditions to Short Form Lease, ¶ 8. The Short Form Lease also states that "Lessor, as part of the rental consideration shall furnish the following utilities, services and equipment: Water & sewerage service, maintenance, private toilet facilities, snow removal and taxes."

Mrs. McHale commenced a personal injury action on May 20, 1993, against defendant Westcott in New York State Supreme Court, Tompkins County. After receiving a third-party summons and complaint from Westcott on July 6, 1993, the government removed the action to federal court on July 9, 1993, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. The McHales filed an amended complaint on February 28, 1994, in which both Westcott and the government are named defendants.[2] The McHales previously had filed administrative claims with the U.S. Postal Service regarding the accident. In the amended complaint, Mrs. McHale demanded $200,000 for her injuries against both defendants, and Mr. McHale asserted a loss of consortium claim and demanded $50,000 against both defendants. On April 8, 1994, the government interposed a cross-claim against Westcott for indemnification.[3]

United States District Court for the Northern District of New York, all material facts set forth by the moving party "shall be deemed admitted" unless controverted by the opposing party. L.R. 7.1(f). In this case, there is no dispute regarding the circumstances of the accident, and the deposition testimony of Mrs. McHale supports the government's Rule 7.1(f) statement concerning the facts of the accident. Westcott's Rule 7.1(f) statement concerns only facts related to indemnification. With the exception of the government's statement that "Mr. Gomes, plaintiff's expert, has no idea why Mrs. McHale fell or what caused her to fall," none of the defendants' Rule 7.1(f) statements is unfavorable to plaintiffs. As demonstrated below, the government's statement regarding Mr. Gomes is nearly a direct quotation from his deposition testimony. I shall deem the defendants' statements of fact as admitted. However, I will view these facts in the light most favorable to the non-moving plaintiffs.

**2.** I shall refer to Westcott and the government simply as defendants rather than also calling them third-party plaintiff and third-party defendant, respectively.

**3.** The government contends that because Westcott never filed an answer to the cross-claim, the allegations of the cross-claim are to be deemed admitted. I decline to do so in this instance. Because I dismiss the plaintiffs' complaint

The parties completed discovery. The government and Westcott each has moved for summary judgment dismissing plaintiffs' complaint because it fails to raise an issue of fact regarding negligence or proximate cause. In the alternative, Westcott has moved for summary judgment on her third-party complaint against the government and seeks indemnification based on the language of their lease agreement. Finally, plaintiffs have moved against the government for payment of expert witness fees pursuant to Fed. R.Civ.P. 26(b)(4)(C). Oral argument on the motions took place on February 21, 1995.

## DISCUSSION

### I. Summary Judgment Standard

■ The standard for summary judgment is well settled. Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456–58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative, and must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. Negligence Cause of Action

The government and Westcott both contend that they are entitled to summary judgment against plaintiffs because the McHales failed to establish the prima facie elements of their negligence claim. Specifically, defendants argue there is no proof that either the government or Westcott had actual notice of any defect in the post office stairs. They further argue that if a latent structural defect existed in the stairs, then they lacked constructive notice of the defect. In the alternative, defendants claim that the deposition testimony of Mrs. McHale and plaintiffs' expert, Mr. Gomes, raises no issue of fact regarding the proximate cause of Mrs. McHale's fall. Plaintiffs respond that defendants had notice of the longstanding defect in the stairs by virtue of their regular inspections of the post office. The McHales also argue that the opinion of their expert that a structural defect in the stairs caused Mrs. McHale's fall is sufficient evidence to raise a question of fact.

### A. *Prima Facie Case*

■ Pursuant to the Federal Tort Claims Act, I apply the law of the state in which the accident occurred, which of course is New York. 28 U.S.C. § 1346(b). Under New York law, a landowner must maintain its property in a reasonably safe condition in view of all the circumstances, taking into account the foreseeability of use and the possibility of injury resulting from that use. *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 568, 352 N.E.2d 868 (1976). The essential elements of a negligence claim thus are that the landowner controls the property, that a defect exists, and that the defect causes plaintiff's injuries. *Turrisi v. Ponderosa, Inc.,* 179 A.D.2d 956, 578 N.Y.S.2d 724, 726 (3d Dep't 1992). Because the issue of control is disputed between Westcott and the government in their indemnification claims, I focus here on the elements of defect and proximate cause. The plaintiff must introduce adequate evidence on each element of

against both defendants, issues of indemnification are moot. Westcott did file an answer to

plaintiffs' amended complaint on April 29, 1994.

its negligence action in order to present a case "sufficient in law to support a favorable jury verdict" and thus avoid summary dismissal. *Basso*, 386 N.Y.S.2d at 568, 352 N.E.2d at 873.

Attendant with the defect element is the issue of notice to defendants. In order to impose liability on a defendant, there first must be evidence "tending to show the existence of a dangerous or defective condition and that defendant either created the condition or had actual or constructive knowledge of it." *Lowrey v. Cumberland Farms, Inc.*, 162 A.D.2d 777, 557 N.Y.S.2d 689, 690 (3d Dep't 1990); *see also Lewis v. Metropolitan Transp. Auth.*, 99 A.D.2d 246, 472 N.Y.S.2d 368, 371 (1st Dep't), *aff'd*, 64 N.Y.2d 670, 485 N.Y.S.2d 252, 474 N.E.2d 612 (1984). A defendant has actual notice of a defect if he created the condition or received reports of it such that he has actual knowledge of the defect's existence. *See Torri v. Big V of Kingston, Inc.*, 147 A.D.2d 743, 537 N.Y.S.2d 629, 631 (3d Dep't 1989). A defendant has constructive notice of a defect if it is visible and apparent. The defect also must have been in existence for a sufficient period of time before the accident so that defendant could discover and remedy it. *Hammond–Warner v. United States*, 797 F.Supp. 207, 211 (E.D.N.Y.1992) (quoting *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 501 N.Y.S.2d 646, 647, 492 N.E.2d 774, 774 (1986)).

Second, the plaintiff must prove that defendants' negligence in failing to correct the defect or warn of its existence was the proximate cause of plaintiff's injuries. New York courts do not require proof of "the precise condition of the particular step upon which [plaintiff] fell." *Gramm v. New York*, 28 A.D.2d 787, 281 N.Y.S.2d 235, 237 (3d Dep't 1967), *aff'd*, 21 N.Y.2d 1025, 291 N.Y.S.2d 7, 238 N.E.2d 498 (1968). Rather, proximate cause is a matter of ordinary experience, and "[c]ircumstantial evidence or common knowledge may provide a basis from which the causal sequence may be inferred." *Id.* (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 41, at 246

(3d ed.)). Therefore, a plaintiff may prove proximate cause by establishing that her fall was the "natural and probable consequence of the conditions present on the stairs." *Gordon*, 501 N.Y.S.2d at 647, 492 N.E.2d at 774; *see also Ellis v. County of Albany*, 205 A.D.2d 1005, 613 N.Y.S.2d 983, 985 (3d Dep't 1994).

### B. *Actual or Constructive Notice of Defect*

As previously stated, plaintiffs must show that defendants had actual or constructive notice of the defective condition of the post office stairs. Unlike many negligence cases, this lawsuit does not involve a slip and fall on stairs containing debris or that are otherwise slippery. *See, e.g., Weisenthal v. Pickman*, 153 A.D.2d 849, 545 N.Y.S.2d 369, 370 (2d Dep't 1989) (indoor stairway littered with garbage); *Gordon*, 501 N.Y.S.2d 646, 492 N.E.2d 774 (outside steps littered with a piece of waxy paper); *Gramm*, 281 N.Y.S.2d at 235 (wet and dirty indoor stairway littered with cigarette butts and paper wrappings). Rather, the McHales claim that the stairs are structurally defective. Plaintiffs retained an expert in structural engineering, Thomas G. Gomes, who stated in a deposition that the post office steps were defective because the difference in height among the various risers varied by more than one-eighth of an inch and because the hand railing was not the proper height above the steps. Gomes made his determination chiefly by comparing the stairs with the requirements of the New York State Uniform Fire Prevention Building Code, the Uniform Building Code and the New York State Labor Building Code. This evidence is sufficient to raise an issue of fact regarding the existence of a longstanding structural defect in the post office stairs.

However, defendants contend that plaintiffs failed to produce any evidence that Westcott or the government had actual or constructive notice of the defect. Viewing the facts in the light most favorable to the McHales, the evidence regarding notice is as follows. First, there is no dispute that the stairs are about 40 years old and unmodified by either defendant.[4] Second, there is evi-

---

4. Plaintiffs' expert estimated that the steps were constructed after 1950.

dence that the post office conducted inspections at least annually, but the government never discovered a defect in the stairs.[5] Third, neither the government nor Westcott received any complaints about the stairs. Although a woman fell on the stairs in November 1979, she claimed the accident was her own fault. Finally, Mrs. McHale testified that she never noticed anything wrong with the stairs prior to her accident, even though she used them about once weekly during 1991 and 1992.

With respect to actual notice, plaintiffs failed to produce any evidence tending to show that defendants created the defect or had actual knowledge of its existence. Plaintiffs contend that the government had notice of the defect by virtue of the post office inspections. However, the inspection reports never alluded to the stairs' structural defect. Thus, the reports could not have provided actual notice to defendants.

With respect to constructive notice, plaintiffs failed to produce any evidence tending to show that the defect was visible and apparent. I can assume that the defect was sufficiently longstanding to give defendants an opportunity to correct it. However, none of the evidence supports the position that defendants should have been aware that the stairs' riser heights varied by more than one-eighth of an inch and that this variance constituted a structural defect. The failure of the post office's regular inspections to disclose a potential trip hazard only is evidence that the defect was not visible or apparent. Additionally, the failure of plaintiff herself to notice a defect only leads to the conclusion that the defect was not visible and apparent. *See Schiano v. TGI Friday's, Inc.*, 205 A.D.2d 407, 613 N.Y.S.2d 881, 882 (1st Dep't 1994).

I contrast the facts of this case, where hundreds of people used the post office stairs over many years without perceiving a defect, with the facts of *Putnam v. Stout*, 38 N.Y.2d 607, 381 N.Y.S.2d 848, 345 N.E.2d 319 (1976). In *Putnam*, the Court of Appeals charged a defendant landowner with constructive notice

of the existence of a driveway pothole not only because it was "plainly visible," but also because it was within a heavily traversed area and adjacent to an area that defendant actually knew needed repair. *Id.* at 850–51. In this case, the only way defendants could have discovered the defect was by undertaking a structural analysis similar to the one Mr. Gomes performed. However, plaintiffs did not allege any fact or occurrence that would have alerted defendants to the need for such analysis. Thus, based on the evidence presented, there is no reasonable inference that defendants should have known about the defective condition of the post office stairs. Plaintiffs raised no material issue of fact with respect to constructive notice.

Consequently, I hold that the McHales did not establish the element of actual or constructive notice of a defective condition. Summary judgment in favor of defendants is warranted by this failure alone. Nonetheless, I will consider independently whether plaintiffs established the prima facie element of proximate cause.

### C. *Proximate Cause*

■ Defendants also argue that the McHales failed to produce any evidence that the uneven risers of the post office stairs caused Mrs. McHale to fall. Plaintiffs respond that the opinion of their expert, Mr. Gomes, sufficiently raises an issue of fact that the structural defect he identified caused the accident. Plaintiffs thus contend that summary judgment is inappropriate.

The McHales rely on *Trimarco v. Klein*, 56 N.Y.2d 98, 451 N.Y.S.2d 52, 436 N.E.2d 502 (1982), in which a plaintiff utilized expert testimony to establish the common use of shatterproof glazing materials for bathroom enclosures, which was not done by the defendants in that case. In *Trimarco*, the Court of Appeals held that "when proof of a customary practice is coupled with a showing that it was ignored and that this departure was a proximate cause of the accident, it may serve to establish liability." *Id.* at 55, 436 N.E.2d at 505. For the purposes of this

---

**5.** Westcott submitted a photocopy of an undated "Albany Division Handicapped Accessibility Survey" regarding the Franklin Post Office. The report contains a sketch diagram of the post office steps, including riser heights, but it does not note any defect.

motion, I will assume that Mr. Gomes' testimony alone established a customary practice regarding the construction and maintenance of steps. I still must determine, however, whether plaintiffs produced evidence that defendants' departure from customary practice caused Mrs. McHale to fall.

Although plaintiffs' expert testified that the post office steps did not conform with various building code standards, he never opined that the variety in the steps' riser heights caused Mrs. McHale's injuries. Specifically, during his deposition the government asked Mr. Gomes, "Do you know why Mrs. McHale fell?" and "Do you know what caused Mrs. McHale to fall?" To each question, Mr. Gomes responded, "No. I have no idea." The testimony of Mrs. McHale herself also fails to establish that a variance in step heights caused her to fall. In her deposition, Mrs. McHale stated that she did not know why she fell, only that "I just started to go down and I guess my feet just went out from under me and I just went down." Mrs. McHale testified that she was unsure whether she used the stairs' hand rail.

Plaintiffs submitted an affidavit from Mr. Gomes dated December 20, 1994, in which he concluded that the structural defect in the stairs was a "competent producing cause" of Mrs. McHale's fall. Aff. of Thomas G. Gomes of 12/20/94, ¶ 7. The government disputes the admissibility of this evidence because the affidavit was sworn after the close of discovery. Defendants also contest its reliability because the affidavit contradicts Mr. Gomes' deposition testimony. I agree with the government that Mr. Gomes' conclusory statement fails to raise an issue of fact regarding proximate cause.

In his affidavit, Mr. Gomes specifically states:

> That based upon my education, experience in the field of engineering, my inspection of the accident site, my sworn deposition of October 6, 1994, and the additional facts contained in this affidavit as they relate to the manner in which Louise McHale fell, I am of the opinion that the failure of the stair and entrance to be in conformity with generally accepted standards and practice for public buildings was a competent producing cause of Louise McHale's fall.

*Id.* The "additional facts" referred to are: (1) Mrs. McHale descended the steps in good weather; (2) Mrs. McHale did not use the stairs' hand rail; (3) Mrs. McHale was carrying her mail in her right hand; (4) Mrs. McHale descended one or two steps when she started to fall; and (5) Mrs. McHale stated that her feet went out from under her and she did not know why she fell. *Id.* ¶¶ 5–6. At the time of his deposition, however, Mr. Gomes knew that the accident took place in good weather, that Mrs. McHale did not use the stairs' handrail, and that Mrs. McHale had fallen. Therefore, none of the "additional facts" of which Mr. Gomes was apprised since the time of his deposition—that Mrs. McHale was carrying her mail and Mrs. McHale's description of the accident—are sufficient to justify his reversal in opinion regarding proximate cause. I therefore disregard the affidavit. *See Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987); *see also Perma Research and Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

█ I recognize that the McHales need not prove the precise step on which Mrs. McHale fell or the precise condition of that step in order to show proximate cause. *Weisenthal,* 545 N.Y.S.2d at 372; *see also Gramm,* 281 N.Y.S.2d at 237. However, plaintiffs still must produce some evidence "sufficient to permit a finding of proximate cause based not upon speculation, but upon the logical inferences to be drawn from the evidence." *Ellis,* 613 N.Y.S.2d at 984–85. Again drawing all reasonable inferences in favor of plaintiffs, the evidence shows that (1) Mrs. McHale does not know why she fell but that her feet went out from under her; and (2) the heights of the stairs' risers varied by more than one-eighth of an inch, which can cause a person to lose her stride when traversing the stairs. As a matter of law, these facts are insufficient to show without resorting to speculation that Mrs. McHale's fall was the natural and probable consequence of the stairs' defect. This case is very similar to *Ellis,* in which the plaintiff alleged that defendants were liable when she fell on roughly graded ground. However, the plaintiff in *Ellis* had testified in her deposition

that she did not know why she fell and could not identify a defect in the area of her fall. *Id.* 613 N.Y.S.2d at 984. Based on these facts, the New York court granted defendants' motion for summary judgment because "the question of whether plaintiff's injury was a natural and probable consequence of the alleged uneven and rocky condition of the ground or the result of some other factor for which defendants cannot be held responsible, such as a misstep by plaintiff, ... cannot be resolved without resort to speculation." *Id.* 613 N.Y.S.2d at 985.

Consequently, the McHales failed to make a prima facie showing of proximate cause or to raise any issue of fact concerning this element. Because plaintiffs did not produce sufficient evidence regarding two elements necessary to this negligence lawsuit—notice and proximate cause—defendants are entitled to summary judgment.

## III. Expert Witness Fees

 Finally, plaintiffs cross-moved against the government for payment of the fees charged by their expert for time spent during his deposition. The government deposed Mr. Gomes on October 6, 1994. He billed plaintiffs $424.86, which consisted of six hours of time billed at $70 per hour and a $4.86 parking expense. The government reimbursed the McHales for the parking charge and 4.5 hours, which represents travel time and the time Mr. Gomes was deposed. However, the government refused to pay for any time Mr. Gomes spent preparing for the deposition. Both parties contend that they had an understanding in support of their position. According to a July 28, 1994, letter to plaintiffs' counsel from the government, "the Government would agree to pay Mr. Gomes his customary rate for taking his deposition, which will be his normal hourly rate for the time spend [sic] during the deposition." Letter of Assistant United States Attorney William F. Larkin to Robert Clune, Esq., of 7/28/94.

According to Rule 26(b)(4)(C), "[u]nless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision." Fed.R.Civ.P. 26(b)(4)(C). I hold in this instance that Mr. Gomes' "reasonable fee" under the rule includes the 1.5 hours not reimbursed by the government. According to Mr. Gomes, only one half hour was spent reviewing the file, and he spent one hour waiting at the deposition site. Letter of Thomas G. Gomes to Robert Clune, Esq., of 11/4/94. There is no manifest injustice in requiring the government to pay Mr. Gomes $35 for reviewing his files, and the expert certainly should be reimbursed for any time during which he was unavailable to do other work, such as time spent waiting at the deposition. *See Lancaster v. Lord,* 1993 WL 97258 *2 (S.D.N.Y.1993) (ordering reimbursement for expert's time spent "preparing for and attending the deposition"); *American Steel Prods. Corp. v. Penn Central Corp.,* 110 F.R.D. 151, 153 (S.D.N.Y.1986) (ordering opposing party to pay expert's fee for time spent "in giving and in preparing for his deposition"). Plaintiffs' cross-motion therefore is granted.

## CONCLUSION

Plaintiffs failed to state a prima facie case for negligence because they produced no evidence that a structural defect caused Mrs. McHale to fall. Plaintiffs also failed to raise an issue of fact as to whether defendants had actual or constructive notice of the defect. Viewing all of the evidence in the light most favorable to the McHales, plaintiffs as a matter of law have not stated a claim in negligence. Defendants' motions for summary judgment therefore are granted, and the action is dismissed. Westcott's summary judgment motion for indemnification against the government accordingly is dismissed as moot. The government's cross-claim against Westcott seeking indemnification also is dismissed as moot. Plaintiffs' motion against the government for payment of expert witness fees is granted, and the government is directed to reimburse plaintiffs in the amount of $105.

IT IS SO ORDERED.