**The State of NEW YORK, Plaintiff,**

v.

**SOLVENT CHEMICAL COMPANY, INC., ICC Industries, Inc., Defendants.**

**No. 83–CV–1401C.**

United States District Court, W.D. New York.

Sept. 27, 2002.

O'Brien & White, P.C., (Mark A. White, of counsel), Boston, Massachusetts, for Recochem and Joseph Kuchar.

## INTRODUCTION

CURTIN, District Judge.

Presently before the court is defendant and third-party plaintiff Solvent Chemical Company's ("Solvent") motion pursuant to Fed.R.Civ.P. 26(b)(4)(C) seeking an order compelling third-party defendants, Recochem, Inc. and Joseph Kuchar (collectively, "Recochem") to pay the reasonable fees and expenses incurred by Dr. E. Bruce Nauman, Solvent's expert, in responding to Recochem's request for deposition. Item 1007. Solvent asks the court to order Recochem to pay $8,855.06 for Dr. Nauman's time and expenses pursuant to the deposition. Item 1009, ¶ 6. Solvent has also filed a motion, pursuant to this court's direction, Item 1045, seeking reasonable attorneys fees and costs incurred in bringing and defending Solvent's motion to compel payment of expert fees and costs. Item 1057.

## BACKGROUND

On September 24, 1999, Solvent contracted with Technical Advisory Services for Attorneys ("TASA") for the services of Dr. E. Bruce Nauman, a Ph.D. in Chemical Engineering at Rensselear Polytechnic Institute in Troy, New York. Item 1058, Ex. B. TASA is an organization that locates and provides expert services. *Id.*, Ex. A. Through TASA, Solvent retained Dr. Nauman to provide expert testimony in its third-party action against Recochem. Item 1009, ¶ 2. Dr. Nauman has submitted affidavits and an expert report on the issue of whether certain transactions involving mixed dichlorobenzene material at issue in the Solvent–Recochem litigation constituted arrangements for disposal within the meaning of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* On May 1, 2001, Solvent submitted an affidavit prepared by Dr. Nauman in support of its motion for summary judgment against Recochem. Item 997. In addition,

Jaeckle, Fleischmann & Mugel, LLP, (Dennis P. Harkawik, and Brenda J. Joyce, of counsel), Buffalo, New York, for Solvent Chemical Company, Inc.

on May 31, 2001, Solvent submitted Dr. Nauman's expert report pursuant to Fed.R.Civ.P. 26(a)(2)(D) and the court's October 30, 2000 scheduling order. Item 1009, ¶ 3.

On May 2, 2001, Recochem's attorney, Mark White, Esq., informed Solvent that he wished to depose Dr. Nauman. *Id.* at ¶ 4; Ex. A. After consulting with the court, the parties agreed that the deposition would take place in Buffalo, New York, on June 7, 2001. *Id.* On June 6, 2001, Dr. Nauman traveled to Buffalo to prepare for his deposition. *Id.* at

| | | |
|---|---|---|
| 6/1/01 thru 6/6/01 | Preparation for deposition | 17.75 hours |
| 6/6/01 thru 6/8/01 | Travel to & from deposition | 4.50 hours |
| 6/7/01 | Deposition | 9.00 hours |
| 6/7/01 | Debriefing | 2.00 hours |

$33.25 hours @ $255.00/hour . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 8,478.75

Expenses:

Airfare, taxi, meals, local travel parking and hotel . . . . . . . <u>886.31</u>
$ 9,365.06

OUTSTANDING INVOICE DATED 6/6/01 <u>$18,303.72</u>

TOTAL AMOUNT DUE $27,668.78

*Id.* On June 15, 2001, Solvent received a copy of the TASA bill summarizing the costs related to the Nauman deposition. Solvent counsel, Christopher Dow, faxed Mr. White advising him to deduct from the total amount due the outstanding balance and the debriefing costs. The letter concluded, "[p]ursuant to FRCP § 26(b)(4)(c), this would make the total your client owes TASA $7,968.75." Item 1038, Ex. E.

Also on June 15, 2001, Mr. White faxed a letter to Mr. Dow, in which he stated, "I never contracted with TASA to pay any expert witness fee. For you to expect my client to pay any portion of this bill, much less your preparation and debriefing time is laughable. I do not intend to pay any portion of this bill." Item 1009, Ex. C. In response to Mr. White's letter, Solvent attorney, Dennis P. Harkawik, faxed a letter to Mr. White directing him to Fed.R.Civ.P. 26(b)(4)(C)[1] and advising him that if Recochem failed to comply with this rule, Solvent would file a motion with the court to compel

¶ 5. On June 7, 2001, Mr. White deposed Dr. Nauman for approximately nine hours. *Id.* During the deposition, Solvent's attorney informed counsel for Recochem that Recochem would be charged for Dr. Nauman's time in responding to its request for the deposition, pursuant to Fed.R.Civ.P. 26(b)(4)(C). *Id.*

On June 12, 2001, TASA sent a bill to Mr. White requesting payment for Dr. Nauman's time and expenses incurred in preparing for and attending the deposition. *Id.* at ¶ 6; Ex. B. The bill set forth the following costs:

Recochem's compliance. *Id.,* Ex. D. Mr. White responded with a letter that same day, noting that the rule "requires the party to pay a reasonable fee for obtaining facts and opinions from the expert. Preparation, debriefing and travel time are hardly reasonable costs. . . . Finally, I do not intend to pay any portion of the bill that goes to TASA. Their fees are outrageous, especially for a witness that has no knowledge on the pertinent issues." *Id.,* Ex. E. Upon receiving Mr. White's letter, Mr. Harkawik telephoned Mr. White's office in an attempt to resolve this matter without court intervention. Item 1009, ¶ 11. Mr. White never returned the phone call. *Id.*

Solvent filed this motion to compel on June 18, 2001, Item 1007, requesting that the court order Recochem to pay TASA $8,855.06 for Dr. Nauman's time and expenses in responding to Recochem's request for a deposition, and to reimburse Solvent for its reasonable fees and costs incurred in pursuing the mo-

---

1. Fed.R.Civ.P. 26(b)(4)(C) states that "[u]nless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision. . . ."

tion. Item 1009, p. 6. By e-mail on June 21, Mr. White offered to settle the matter by paying $2,250.00 as expert fees to "encompass the nine hours of deposition time for Dr. Nauman[ ]." Item 1081, Ex. I. In the e-mail, Mr. White objected that he did not intend to pay for the time Solvent spent "educating [its] witness," nor did he intend to pay for the expert's travel expenses. *Id.* He claimed that because the witness had no qualifications, he still felt it would be "manifestly unjust" to require his client to pay any fee. *Id.*

Mr. Harkawik declined Mr. White's offer in an e-mail dated June 22, 2001. Item 1081, Ex. J. Mr. Harkawik observed that Mr. White's "two previous letters to me stated that you refused to pay any money at all for the deposition of our expert, which you are required to pay for under the federal rules, and you refused to answer my telephone call trying to resolve the matter—which required Solvent to move to compel for the third time against Recochem." *Id.* Mr. Harkawik proposed a counter offer: Recochem would "pay for three hours of Dr. Nauman's preparation time, all of his travel expenses, the nine hours of the deposition, and the costs to Solvent of being forced to draft and file yet another Motion to Compel." *Id.* Recochem refused this offer. Item 1081, ¶ 12.

On August 1, 2001, Recochem submitted a response in opposition to Solvent's motion to compel. Item 1021. Solvent then submitted an affidavit and Reply Memorandum of Law. Items 1038 and 1039.

During oral argument on August 29, 2001, the court indicated it required further information before ruling on the expert fees motion. In an order dated that same day, the court requested an affidavit from Dr. Nauman detailing (a) what he is paid as an expert in similar cases; and (b) what he is paid by TASA, so that the court might determine the difference between his fee and the TASA service charge. The court also requested a detailed accounting of how Dr. Nauman calculated his preparation time, and copies of his out-of-pocket travel expense receipts. Item 1045, p. 1. The court asked Solvent's attorneys to provide further authority for its

position that defendants should pay TASA's hourly fee rather than the amount Dr. Nauman received as part of that fee. *Id.* In addition, the court directed Solvent's attorneys to file an application for attorneys' fees. *Id.*

In response to the order, Solvent submitted its motion for attorneys' fees on September 21, 2001, Item 1057, including affidavits by Dr. Nauman, Item 1060, and Mr. Harkawik, Item 1058, and a memorandum of law. Item 1059. Recochem opposed the motion for attorneys' fees, Items 1080, 1081, and also submitted an *ex parte* motion asking the court to make an *in camera* review of the significant differences between Dr. Nauman's Affidavit and Dr. Nauman's Expert Report.[2] Item 1078. Solvent objected to the request for *in camera* review. Item 1089.

In a telephone conference/oral argument on October 29, 2001 concerning the motion for attorneys' fees, the court denied Recochem's motion for the *in camera* review of the documents. It ordered Recochem's counsel to itemize the differences between the two documents and submit them to the court and to Solvent's counsel. Recochem complied in a document filed on November 15, 2001. Item 1098.

### DISCUSSION

Federal Rule of Civil Procedure 26(b)(4) provides:

(4) Trial Preparation: Experts.

(A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial.

\*\*\*

(C) Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision....

The payment of expert fees is mandatory, as indicated by the verb "shall," and a party is excused from this obligation only upon a finding of "mandatory injustice."

**2.** See discussion, *infra,* Section I(A)(2).

■ "[T]he underlying purpose of Rule 26(b)(4)(C) is to compensate experts for their time spent participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert's work free from cost." *Goldwater v. Postmaster General*, 136 F.R.D. 337, 339 (D.Conn.1991).

Recochem contends that charging it for fees incurred by Dr. Nauman in his deposition would constitute a manifest injustice. Item 1021. It argues that Dr. Nauman's fees are unreasonable, that preparation time and travel expenses are not compensable under Rule 26(b)(4)(C), *id.,* and that Solvent is guilty of "extreme overreaching" regarding Dr. Nauman's hourly rate, expenses, travel, and preparation time. Item 1081, p. 10. It requests that the court examine Dr. Nauman's deposition and Recochem's motion to strike the expert testimony of Dr. Nauman to determine his "lack of expertise." Item 1021. Recochem contends that because Dr. Nauman is a chemical engineer with no marketing experience, any fee that is due should be based on what someone with marketing experience would charge. *Id.* Finally, Recochem argues that it should not have to pay that portion of the hourly fee that represents a markup for TASA's services: if it has to pay for anything, it should only be charged what Dr. Nauman himself receives per hour from TASA, and for out-of-pocket expenses.

Solvent asserts that the hourly rate charged by TASA in this bill ($255.00 per hour) is the same rate TASA charges Solvent for Dr. Nauman's services in this case. Item 1009, ¶ 7. Furthermore, in his affidavit, Dr. Nauman states that this rate is less than what he charges clients for whom he works directly and is comparable to the rates charged for services of similarly qualified experts. Item 1010, ¶¶ 4, 5.

## I. Deposition Fee

### A. Reasonableness of the Fee

■ There is little authority defining a reasonable fee. *Goldwater*, 136 F.R.D. at 339. Courts have acknowledged this and have used their discretion to settle upon reasonable amounts. *Id.* In *Goldwater*, the court set forth six factors that should be considered in determining whether a particular fee request is reasonable within the meaning of Rule 26(b)(4)(C). *Id.* at 339–40. These factors include:

> (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographic area; and (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Id.* at 340. The court further stated that the weight to be given to any one of the factors in a particular case depends upon the circumstances before the court. *Id.* Courts also look to the fee being charged by the party who retained the expert, and the fees traditionally charged by the expert on related matters. *Mathis v. NYNEX*, 165 F.R.D. 23, 25 (E.D.N.Y.1996) (citing *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493, 496 (S.D.Iowa 1992)).

■ The party seeking reimbursement of deposition fees bears the burden of proving reasonableness. *Royal Maccabees Life Insurance Co. v. Malachinski, D.O.,* 2001 WL 290308, *16 (N.D.Ill. Mar.20, 2001). If the parties provide little evidence to support their interpretation of a reasonable rate, the court may use its discretion to determine a reasonable fee. *Id.*

■ In his first affidavit, Dr. Nauman asserts that the $255.00 hourly rate charged to Recochem by TASA is the same rate that Solvent is charged by TASA in this litigation, Item 1010, ¶ 4. It is also the rate Dr. Nauman typically charges when he works in association with TASA. *Id.* He avers that this rate is less than the rate that he charges clients for whom he works directly. *Id.* Based on his experience in the expert consulting field, Dr. Nauman stated his belief that $255.00 per hour is comparable to the rates charged for the services of similarly qualified experts. *Id.* ¶ 5. In response to the court's order, Dr. Nauman submitted a second affidavit which provided more detail to

support his statements. He included a list of other matters for which he has been retained as an expert witness, and the hourly fee which he has charged. Item 1060, Ex. C. His hourly fee ranged from $250.00 to $300.00, plus expenses. *Id.* Solvent also provided an affidavit which contained as an exhibit a letter from a TASA executive, in which she compared Dr. Nauman's $255.00 per hour fee with that of another expert TASA had recommended to Solvent in this litigation at a rate of $285.00 per hour. Item 1058, Ex. A. The letter also noted an additional consultant available in New York State with similar credentials, whose hourly rate for consulting was $270.00 and whose hourly rate for depositions was $455.00. *Id.* The resumés of the two other experts were attached. Recochem submitted no evidence which would indicate Dr. Nauman's hourly rate is unreasonable.

Assessing Dr. Nauman's fee against the guidelines set forth in *Goldwater,* the court finds that Dr. Nauman's $255.00 hourly fee is reasonable. Dr. Nauman has been a professor of chemical engineering at Rensselaer Polytechnic Institute for over twenty years. Prior to that, he worked in scientific and management positions at Union Carbide Corp. for thirteen years, and at Xerox Corp. for four years. Although no evidence was submitted on the specific question of the education and training required to provide the expert insight sought, it is a reasonable conclusion that a person with extensive education and experience in chemical processes and product management would be necessary to assist the court in understanding this complex CERCLA case, involving hundreds of documents and hundreds of pages of deposition testimony. Moreover, Dr. Nauman's rate is at the low end in comparison with similar experts recommended by TASA. Item 1058, Ex. A.

The fee at issue does not seem to be an exorbitant amount for Dr. Nauman's testimony. If $255.00 per hour is consistent with the rate charged by experts with similar qualifications, it is not at all unreasonable for Recochem to pay that fee, since it elected to depose Dr. Nauman.

## 1. The TASA Fee

■ In response to the court's order to provide information on the difference between Dr. Nauman's hourly fee and TASA's service charge, Solvent provided a letter from TASA indicating that TASA charges Solvent $255.00 per hour for Dr. Nauman's services, and retains $80.00 per hour of that $255.00 as its fee for locating and providing the expert. Item 1058, ¶ 9 and Ex. A. Additionally, the expenses billed by TASA for Dr. Nauman include a "twenty percent markup," *id.,* pursuant to the Memorandum of Confirmation between Solvent and TASA (attached to Item 1058 as Ex. B).

Recochem strenuously objects to paying the TASA service fee, arguing that "No defendant should have to pay the cost of plaintiff finding an expert." Item 1080, p. 4. If Solvent is entitled to anything, continues Recochem, it is the hourly fee the expert is paid by TASA for the deposition only, not the hourly amount which includes the TASA finder's fee. "The fact that the expert is willing to work for $175 per hour is conclusive proof that $175 per hour is a reasonable rate." Item 1080, p. 4. Recochem protests that it has been unable to locate any case that justifies the imposition of a "finder's fee" on the defendant.

Solvent counters that there is no basis for limiting the amount that Recochem is obliged to pay under Rule 26(b)(4)(C) to the amount Dr. Nauman is actually paid by TASA. Solvent notes that "[t]he hourly rate charged by TASA for Dr. Nauman's time in the invoice at issue (*i.e.,* $255) is the same rate TASA charges Solvent for Dr. Nauman's services in this case." Item 1009, ¶ 7. The $255.00 per hour charge is also "roughly equal to or less than the amount Dr. Nauman charges when not working for TASA and it is less than the rate charged by other comparable experts." Item 1058, ¶ 11. *See* Item 1058, Ex. A; Item 1060, Ex. C. Solvent argues that to limit the amount that Recochem is required to pay to that portion that Dr. Nauman personally receives would be inconsistent with the purpose of Rule 26(b)(4)(C), which is to "'avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement.'" Item 1059, p.

5, quoting *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 645 (E.D.N.Y.1997). Applying Recochem's logic, Solvent would thus be forced to pay the $80.00 per hour difference for time spent by Dr. Nauman providing expert discovery for Recochem's benefit in a deposition that Recochem requested. The court agrees that this would be an unfair burden on Solvent and would be contrary to the intention of the Rule.

Moreover, there is nothing unfair about requiring Recochem to pay the full hourly fee charged by TASA for Dr. Nauman's time. Solvent is not asking Recochem to pay a premium above the hourly fee they are charged by TASA, which courts have found objectionable. *See Equal Employment Opportunity Commission v. Johnson & Higgins, Inc.*, 1999 WL 32909, *4 (S.D.N.Y. Jan.21, 1999) (noting that "courts most often reduce expert fee requests when the expert seeks to charge the opposing party a higher rate than the expert charges the retaining party").

Among the *Goldwater* factors for considering a fee reasonable is the fee charged to the party who retained the expert. As the court found the $255.00 per hour fee reasonable, the court also finds that Recochem should pay the full fee, not Dr. Nauman's net fee.

### 2. Manifest Injustice

■ Lastly, Recochem claims that manifest injustice would occur if it were required to pay any fees and costs of the expert deposition because Solvent served a "last minute" expert report just two days before Dr. Nauman was scheduled to be deposed. Item 1021, p. 2. Recochem argued that there were "significant differences" between the two documents, requiring Recochem counsel to compare the two documents and prepare the deposition on an expedited schedule. *Id.* Recochem objected that Solvent's representation that the documents were materially similar "was not the truth and a continued effort of the plaintiff to mislead." *Id.*

The court finds this argument totally irrelevant. The court issued a scheduling order in October 2000 providing for the May 31, 2001 date by which Solvent would serve its expert report. Item 974. Then, in a May 15, 2001 letter to the court, Mr. White acknowledged that deadline and asked the court to reaffirm the date in a proposed modified scheduling order (Item 1003). Item 1038, Ex. A. Concerning the June 7 deposition date, Solvent asserts that "[a]fter consulting with the Court, the parties agreed that Dr. Nauman would be deposed in [Solvent's counsel's] offices on June 7, 2001." Item 1009, ¶ 4. Mr. White received the report two days before the deposition, which he contends allegedly contained numerous differences when compared with the affidavit. If he felt the truncated time frame constituted too onerous a burden for him to adequately prepare for the deposition, he could have contacted the court or Solvent to request a postponement. This he did not do, and he cannot now be heard to complain that manifest injustice resulted when he could have prevented it. This *post hoc* attempt of Recochem to manufacture "manifest injustice" is totally without merit.

■ Recochem's argument that the fee is unreasonable because Dr. Nauman lacks knowledge on the issue at hand is also irrelevant and does not change the fact that it is obligated to compensate Dr. Nauman for his time. *See Equal Employment Opportunity Comm. v. Johnson & Higgins, Inc.*, 1999 WL 32909 at *5 (S.D.N.Y. Jan.21, 1999) (holding that deposing party was still obligated to pay expert witness fees even though deposing party believed that certain experts were redundant or were testifying on irrelevant issues based on the current posture of the case).

In this era of litigation, where many parties contract through agencies for experts, it is not unreasonable for the opposing party to pay the fees and costs being charged by the contracting agency for the expert. Witness provider services like TASA are part and parcel of modern litigation, and parties should keep in mind that if their opponent's expert has been hired through such services, they will be required to pay the fees charged by those services. The court therefore orders the Recochem defendants to pay Solvent $255.00 per hour for nine hours for the

expert witness deposition fee, which amounts to $2,295.00.

## II. Preparation Time Fees

██ Recochem argues that it should not be charged for the time Dr. Nauman spent preparing for his deposition. Item 1021. Mr. White points out that the 17.75 hours of preparation time indicated on the TASA bill consists of time Dr. Nauman and counsel for Solvent spent "educating" each other, and thus should not be charged to Recochem. *Id.,* p. 3. In his affidavit, Mr. White notes that in preparation for the June 7, 2001 deposition, Dr. Nauman testified that he only reviewed his expert report, and he did nothing else from the time he submitted his report. *Id.* The expert report which Dr. Nauman had just completed is dated May 30, 2001.[3] The bill reflects 17.75 hours of preparation time for the period from June 1, 2001 to June 6, 2001. Item 1009, Ex. B.

In its post-oral argument order, Item 1045, the court asked Dr. Nauman to specify the times and dates of his preparation, who he met with, and what he reviewed.[4] As Exhibit B to Dr. Nauman's Affidavit, Item 1060, Dr. Nauman indicated that his preparation time "included reviewing documents of the following types: (a) Papers and other evidence submitted by the parties in connection with this lawsuit; (b) Deposition transcripts provided me by Solvent's counsel, including those of former and current employees of Solvent and Recochem; (c) Information in the open literature on chlorobenzene manufacturing process and product pricing." *Id.* He asserts that of the 17.75 hours, "5.75 hours were spent in the office of E.B. Nauman & Associates and 12 hours were spent in the offices of Solvent's attorneys." *Id.*

The court notes that this information conflicts with representations of Solvent's counsel during oral argument on October 29, in which Mr. Harkawik asserted that Dr. Nauman spent eight hours on June 6, 2001 with Solvent counsel preparing for the deposition.

It also conflicts with Dr. Nauman's deposition testimony, in which he said he spent "roughly half a day, three quarters of a day" meeting with Solvent's attorneys on June 6, 2001 in preparation for the deposition. Item 1038, Ex. D, p. 29. Further, since the expert report was completed just seven days prior to the deposition, it would seem that Dr. Nauman would not require extensive preparation time because he had reviewed many of the pertinent documents a short time previously.

The district courts in the Second Circuit have consistently held that time spent by an expert preparing for a deposition is compensable under Rule 26(b)(4)(C). *See, e.g., Equal Employment Opportunity Comm.,* 1999 WL 32909 at *1 (awarding expert witness fees for time spent preparing for deposition but reducing the number of hours); *Bonner v. American Airlines, Inc.,* 1997 WL 802894, *1 (S.D.N.Y. Dec.31, 1997) (noting that the weight of authority permits recovery of fees for preparation time in connection with a deposition under Rule 26(b)(4)(C)); *Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 647 (E.D.N.Y.1997) (holding that "Rule 26(b)(4)(C) encompasses a reasonable fee for time spent by an expert preparing for deposition"); *McHale v. Westcott,* 893 F.Supp. 143, 151 (N.D.N.Y.1995) (permitting compensation for time spent preparing for deposition). Accordingly, time spent by Dr. Nauman preparing himself for his deposition must be compensated by Recochem under Rule 26(b)(4)(C). However, cases provide a caveat to this rule. In *Magee,* the district court judge held that Rule 26(b)(4)(C) permits compensation for "time spent by an expert preparing for deposition, but not for the time the expert spent preparing the attorney who retained him." 172 F.R.D. at 647.

Solvent argues that given the complexities of the case, "it was clearly necessary for Dr. Nauman to review much of this underlying

---

3. Mr. White's affidavit states that the expert report arrived at his office two days before the deposition, June 5, 2001.

4. *See Lancaster,* 1993 WL 97258 at *2 (awarding reasonable fees for preparation time but ordering

the plaintiff to submit an affidavit detailing the services provided by its expert and the number of hours he spent providing each service so that defendant's "fair share" could be assessed).

information in preparing for his deposition." Item 1039, p. 5.

While the court finds that a reasonable amount of preparation time by Dr. Nauman would be compensable, 17.75 hours of preparation time is clearly excessive. The court will award Solvent three hours of preparation time, representing a fair and reasonable amount of preparation time for which Solvent at one time agreed to be compensated. Item 1081, Ex. J. The court therefore orders the Recochem defendants to pay $765.00 in expert witness preparation time.

### III. Travel Time and Fees

Solvent has requested that the court order Recochem to pay for the expenses incurred by Dr. Nauman in traveling to and from the deposition. Item 1009. The TASA bill charges 4.5 hours of travel time at a rate of $255.00 per hour and various travel expenses (airfare, taxi, etc.). Item 1009, Ex. B. Recochem objects to payment of these fees, arguing that because it was Solvent's choice to have the deposition take place in Buffalo so that they would have time to prepare their witness, and because there was no prior discussion as to any fees that may be charged to Recochem for travel, it should not have to reimburse Dr. Nauman for these costs. Item 1021. Recochem further objected in its papers and at oral argument on August 29, 2001, that the bill indicating travel expenses was not itemized. *Id.,* p. 5. In its order following oral argument, the court requested itemization of Dr. Nauman's travel expenses, which he subsequently provided, along with copies of his hotel and airfare receipts. Item 1060, Ex. A. The total amounted to $738.59, which was increased by TASA's 20 percent markup.

■ As with preparation time, the district courts in the Second Circuit have held that time spent traveling to and from the deposition, and the expenses incurred during travel, so long as they are reasonable, are compensable under Rule 26(b)(4)(C). *See Equal Employment Opportunity Comm.,* 1999 WL 32909 at *3; *Bonner,* 1997 WL 802894 at *1; *Magee,* 172 F.R.D. at 646; *McHale,* 893 F.Supp. at 151; *In re Agent Orange Product Liability Litigation,* 105 F.R.D. 577, 582 (E.D.N.Y.1985); *David Tunick, Inc. v. E.W. Kornfeld,* 151 F.R.D. 534, 536 (S.D.N.Y.1993). Recochem's objections regarding Solvent's choosing the deposition site and lack of prior discussion between the parties on the matter of payment are irrelevant. None of the cases permitting reimbursement for travel time considers these factors.

■ Furthermore, Recochem agreed to the deposition site and, as the deposing party, should have been aware that it would be responsible for reasonable fees associated with the deposition. The rationale the court follows here is similar to that followed with the hourly fee. Solvent contracts with and pays TASA the amount TASA bills for the expert's services. The contract between Solvent and TASA provides for a 20 percent markup on expenses. Recochem is therefore obliged to pay the amount TASA bills for expenses, not the actual out-of-pocket costs to Dr. Nauman. The court therefore orders the Recochem defendants to pay for 4.5 hours of travel time at $255.00 per hour, or $1,147.50, plus $886.31 in expenses, totaling $2,030.81 to Solvent for the expert's travel time and expenses pursuant to the deposition.

### IV. Solvent's Motion for Attorneys' Fees

Following the August 29, 2001 oral argument, the court directed Solvent to make a formal motion for attorneys' fees and set forth a scheduling order on the motion. Item 1045. Solvent made the motion, Item 1057, which Recochem opposed. Item 1080. The court conducted a telephone conference, where counsel argued the merits of this issue on October 29, 2001.

Solvent seeks its reasonable attorneys' fees and costs in bringing and defending its motion to compel payment of its expert's fees and costs on the basis of the court's "inherent power" to assess fees and costs when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Solvent also points to Rule 11 as authorizing a court, either upon the motion of a party or on its

own initiative, to impose sanctions upon an attorney or party that files a paper for "any improper purpose" that contains legal contentions not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," or that contains factual allegations that lack "factual support." Fed.R.Civ.P. 11(b)–(c).

Solvent argues that an award under either the "inherent powers" of the court or under Rule 11(b)(2) and (b)(3) is appropriate for several reasons: (1) Recochem compelled Solvent to make its motion by refusing to pay any portion of the requested amount, despite the clear mandates of Rule 26(b)(4)(C) and by the fact that Recochem failed to articulate any legitimate basis for its refusal; and (2) Recochem has engaged in a pattern of dilatory and uncooperative conduct during the course of this litigation, requiring Solvent to file three motions to compel to force the Recochem defendants to comply with their discovery obligations.[5] Further, (3) Recochem cannot cite relevant case law in support of its contentions, and makes patently frivolous arguments (*e.g.*, that Solvent did not notify counsel of its intention to seek statutorily mandated fees), while blatantly distorting the truth. Item 1059. Solvent attorney, Dennis Harkawik, has submitted an affidavit which lists Solvent's costs in bringing the motion for expert fees ($1,740.30), Item 1058, p. 2, and the fees and costs related to responding to Recochem's opposition to the motion ($5,052.50), *id.*, p. 3, for a total of $6,522.80.[6]

Recochem, for its part, responds by pointing the finger at Solvent, claiming that Solvent's actions were in bad faith: its misrepresentations forced Recochem to "spend excessive amounts of time replying to needless pleadings, improper affidavits and an 'expert' that is totally unqualified to testify." Item 1080, p. 1. Although Solvent cor-

rected the TASA bill, indicating that Recochem should ignore the outstanding balance and debriefing time, "the damage had been done. . . ." *Id.*, p. 2. Recochem minimizes the disputes concerning the previous motions to compel filed by Solvent and argues that the expert fee controversy arose because of the "inconsiderate and deliberate mishandling of the request by Solvent's attorneys." *Id.*, p. 3. According to Recochem counsel, Solvent's Rule 11 argument "has no basis." He comments that Solvent counsel "will go to any length to support their motions, including blatant distortions, even the paying and hiring of witnesses." *Id.*, p. 3.

### A. Rule 11

 This court will not assess attorneys' fees and costs pursuant to Rule 11, because Rule 11(d) provides: *"Inapplicability to Discovery.* Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37." Since Solvent's original motion was brought pursuant to Rule 26, and its motion to compel was brought pursuant to Rule 37, sanctions in the form of attorneys' fees may not be awarded under Rule 11.

### B. Inherent Powers

 Federal courts have " 'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices." *Roadway Express Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). The court's inherent power "derives from the sage acknowledgment that courts are 'vested, by their very creation, with power to impose silence, respect and decorum, in their presence, and submission to their lawful mandates.' " *DLC Manage-*

---

5. In July 2000, Solvent moved to compel Recochem to provide meaningful responses to Solvent's first set of interrogatories. Item 958. The court granted the motion on August 19, 2000. Item 966. In October 2000, Solvent made a motion to compel Joseph Kuchar, President of Recochem and a named party to the litigation, to submit to deposition. Recochem counsel "even-

tually capitulated on this dispute prior to the Court having to issue an order." Item 1059, p. 3. In neither case did Solvent press for an award of fees under Rule 37(a)(4).

6. Solvent calculated the total fees and costs as $6,068.80. Item 1058, p. 3.

*ment Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir.1998) (quoting *Chambers v. NASCO,* 501 U.S. at 43, 111 S.Ct. 2123). The Supreme Court has expressed a preference for the imposition of sanctions under the Federal Rules, when possible. *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123.

When imposing sanctions pursuant to its inherent powers, the district court must find that the conduct in question was "without a colorable basis" and undertaken in bad faith, *i.e.,* "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol,* 194 F.3d 323, 336 (2d Cir.1999).

The first inquiry, then, is whether Recochem's counsel had a "colorable basis" to refuse to pay the costs associated with deposing Solvent's expert. The court must consider whether Recochem had "some legal and factual support, considered in light of the reasonable beliefs of the individual...." *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980), *quoted in Revson v. Cinque & Cinque,* 221 F.3d 71, 79 (2d Cir.2000)

There is no colorable basis, either legally or factually, to support the refusal of Recochem's counsel to pay Solvent's expert's fees upon Solvent's request. The dictates of Rule 26(b)(4)(C) could not be more clear: a party *shall* pay for such reasonable fees. Secondly, Solvent's counsel indicated to Recochem's counsel during the deposition of Dr. Nauman that it would be charged for Dr. Nauman's time in responding to Recochem's discovery. Item 1009, ¶ 5. Recochem's counsel provides the incredible explanation, or excuse, that Solvent did not discuss the matter of fees with him beforehand. However, it is not the place of Solvent's counsel to educate Recochem's counsel on the requirements of the Federal Rules. Recochem's position is untenable and without a colorable basis.

When a court exercises its inherent powers, it must also make a finding of bad faith, as "shown by (1) 'clear evidence' or (2) 'harassment or delay or ... other improper purposes.'" *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir.1998) (citation omitted). "A court should be especially circumspect in imposing this type of sanction due to its stigmatizing effect upon the censured attorneys." *Mathias v. Jacobs,* 167 F.Supp.2d 606, 623 (S.D.N.Y. 2001). Moreover, the inherent power must be employed with temperance and restraint "to ensure ... that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims." *Oliveri v. Thompson,* 803 F.2d 1265, 1277 (2d Cir.1986). In recognizing this need for restraint, the Second Circuit has "required a particularized showing of bad faith to justify the use of the court's inherent power." *United States v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991).

The bad faith standard is not easily satisfied in the Second Circuit. *Mathias,* 167 F.Supp.2d at 623, citing *Revson v. Cinque & Cinque,* 221 F.3d 71 (2d Cir.2000). In *Revson,* the lawyer's "extreme language and tactics ... sank as close to the threshold of the gutter as imaginable and still [he] escape[d] judicial sanctions." *Mathias,* 167 F.Supp.2d at 624.

In this case, to support its call for sanctions under the court's inherent powers, Solvent complains about Recochem's pattern of "dilatory and uncooperative conduct." Item 1059, p. 2. This allegation does not approach the bad faith standard required for sanctions under the court's inherent powers. The first motion to compel was resolved by court order, and the second motion to compel was ultimately resolved by the parties. The court concludes that attorneys' fees and costs are not available here pursuant to the court's inherent powers.

### C. Rule 37

Rule 37, however, provides sanctions for various enumerated failures of a party to comply with discovery provisions. While nothing in Rule 37 specifically addresses the issue of sanctioning a party's noncompliance with Rule 26(b)(4)(C), the court finds that Rule 37(a) inherently provides authority for the imposition of sanctions for such a violation. Among the sanctions the court may consider are reasonable costs and attorneys' fees.

This position finds support in case law. In *Miltope Corp. v. Hartford Casualty Insurance Co.*, 163 F.R.D. 191 (S.D.N.Y.1995), the court held that "[t]he sanctions specified under Rule 37 are not exhaustive, and the Court may impose such sanctions as are just." *Id.* at 194. In *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338 (D.Conn. 1981), the court concluded that it "possesses inherent power to control the disposition of the cases before it" and this "includes the authority to 'levy sanctions in response to abusive litigation practices'" and "[s]uch sanctions may include financial assessments against attorneys" or their clients. *Id.* at 352, n. 11.

██ Rule 37(a)(2) allows a party to make a motion to compel discovery required by the Federal Rules. It specifies that such motions may be brought if a party fails to comply with Rule 26(a) or Rules 30, 31, 33, 34. Rule 37(a)(3) provides that "[f]or purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." In this case, Recochem responded negatively to Solvent's initial inquiries regarding payment for Dr. Nauman's fees and costs, an obligation Recochem clearly had under the Federal Rules. Solvent brought a motion to compel to force the Recochem defendants to meet its discovery obligations. This court regards Recochem's negative response as a failure to comply with their discovery obligations under Rule 37(a).[7] Rule 37(a)(4) provides that if the motion to compel (per Rule 37[a] ) is granted,

the court shall, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure

or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

The court has granted Solvent's motion to compel, *supra*. The parties had an opportunity to be heard on this issue on both August 29 and October 29, 2001. Solvent first made a good faith attempt to obtain Recochem's compliance without resorting to court intervention, to no avail. Recochem took an intransigent position that it would not pay for any of the expenses, which was totally unjustified according to the clear mandate of Rule 26(b)(4)(C). Yet, Recochem persisted in arguing its untenable position, even making an *in camera* motion (for the court to examine alleged differences between Dr. Nauman's affidavit and report) that was totally irrelevant to the resolution of the expert fees issue. This submission prompted a response by Solvent, and served to needlessly prolong litigation of an issue that should not have been litigated in the first instance. Prior to this motion to compel, Recochem had twice refused to comply with discovery requests. Solvent was completely justified in filing its motion to compel payment for expert fees.

The court therefore awards Solvent $6,522.80 in attorneys' fees. Item 1058, p. 3. The court notes that Solvent's counsel filed additional submissions following August 23, 2001, which is the last date for which attorneys' fees were listed in Mr. Harkawik's affidavit. However, the court will not seek a further elaboration from Solvent for the time spent on the later submissions, given that it has found there was some merit in Recochem's objection to paying for 17.75 hours of preparation time, and because the time spent in responding to the motion to compel was excessive.

### CONCLUSION

Solvent's motion to compel payment of expert witness fees, Item 1007, is granted. Re-

---

**7.** Rule 37(b) concerns sanctions if a party fails to comply with a court order, which is inapplicable here, as are Rules 37(c), which concerns failure to disclose or refusal to Admit; Rule 37(d), which concerns the failure of a party to attend its own deposition, to serve answers to interrogatories or respond to requests for inspection; and 37(g), which concerns failure to participate in the framing of a discovery plan. Sanctions for non-Compliance with Rule 26(b)(4)(C) can only be found under Rule 37(a).

cochem is ordered to reimburse Solvent $2,295.00 for Dr. Nauman's deposition time, $765.00 for preparation time, and $2,030.81 for traveling time and expenses. Solvent's motion for attorneys' fees, Item 1057, is also granted. Recochem is ordered to reimburse Solvent $6,522.80 for attorneys' fees incurred in association with making its initial motion to compel payment of expert witness fees.

So ordered.